NO. _____

# United States Court of Appeals

*for the*

# Fourth Circuit

———————◆———————

IN RE EXPRESS SCRIPTS, INC.,

*Petitioner.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CASE NO. 5:24-cv-142-JPB

## PETITION FOR A WRIT OF MANDAMUS

CHARLES R. BAILEY
JUSTIN C. TAYLOR
BAILEY & WYANT, PLLC
500 Virginia Street E, Suite 600
P.O. Box 3710
Charleston, West Virginia 25337
(304) 345-4222
cbailey@baileywyant.com
jtaylor@baileywyant.com

WILLIAM J. IHLENFELD
MAXIMILLIAN F. NOGAY
FLANNERY GEORGALIS, LLC
400 Fort Pierpont Drive,
Suite 201
Morgantown, West Virginia
26508 (304) 308-6699
wihlenfeld@flannerygeorgalis.com
mnogay@flannerygeorgalis.com

CHRISTOPHER G. MICHEL
   *Counsel of Record*
MICHAEL J. LYLE
JONATHAN G. COOPER
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
christophermichel@quinnemanuel.com
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

CP COUNSEL PRESS   (800) 4-APPEAL • (386576)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................iii

INTRODUCTION ....................................................................... 1

RELIEF SOUGHT ...................................................................... 2

ISSUES PRESENTED .................................................................. 2

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................... 2

    A.   Plaintiffs' Actions ................................................................ 2

    B.   The Parties' Competing Case Management Proposals .......... 3

    C.   The Case Management Order And Denial Of
        Reconsideration ........................................................... 5

LEGAL STANDARD ................................................................. 10

REASONS THE WRIT SHOULD ISSUE.............................................. 11

I.    EXPRESS SCRIPTS HAS A CONSTITUTIONAL RIGHT TO
    A JURY TRIAL ON PLAINTIFFS' CLAIMS. .............................. 11

    A.   Plaintiffs' Public-Nuisance Claims Are Subject To The
        Seventh Amendment Jury Trial Right. ............................... 13

        1.   Public-Nuisance Claims Are Historically Legal In
            Nature. ..................................................................... 14

        2.   Plaintiffs' Public-Nuisance Claims Seek Remedies
            That Are Legal In Nature. .......................................... 16

    B.   The District Court Misapplied The Seventh Amendment
        Analysis To Plaintiffs' Public-Nuisance Claims. .................. 17

        1.   The District Court Erroneously Concluded That
            Plaintiffs' Public-Nuisance Claims Seek Only
            Equitable Relief............................................................. 18

i

2. The District Court Improperly Collapsed The Two-Step Analysis Into A Single, Circular Inquiry And Looked To State Law For The Answer. ........................ 22

C. Express Scripts Has A Clear And Indisputable Right To A Jury Trial On Plaintiffs' Other Legal Claims. .................. 26

II. THE DISTRICT COURT EXCEEDED ITS JURISDICTION BY ORDERING A STATEWIDE TRIAL. ...................................... 29

A. The Statewide Trial Clearly Violates Judicial Limits. ........ 30

1. Plaintiffs Lack Article III Standing To Bring Claims On Behalf Of The State And Its Citizens. ...... 30

2. The District Court Lacks Jurisdiction To Issue Statewide Relief. .......................................................... 34

B. Mandamus Is Appropriate Under The Circumstances. ....... 36

CONCLUSION ................................................................................ 38

CERTIFICATE OF COMPLIANCE ................................................ 40

CERTIFICATE OF SERVICE ........................................................ 41

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
  458 U.S. 592 (1982) ................................................................... 31

*Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,*
  369 U.S. 355 (1962) ................................................................... 29

*Att'y Gen. v. Cleaver,*
  34 Eng. Rep. 297 (Ch. 1811) .................................................... 15

*State ex rel. Amerisourcebergen Drug Co. v. Moats,*
  859 S.E.2d 374 (W. Va. 2021) ................................................... 24

*Bd. of Sup'rs of Warren Cnty. v. Va. Dep't of Soc. Servs.,*
  731 F. Supp. 735 (W.D. Va. 1990) ........................................... 33

*Beacon Theatres, Inc. v. Westover,*
  359 U.S. 500 (1959) ....................................................... 10, 19, 26, 27

*In re Bituminous Coal Operators' Ass'n, Inc.,*
  949 F.2d 1165 (D.C. Cir. 1991) ................................................ 37

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry,*
  494 U.S. 558 (1990) ................................................................... 23

*City of Chicago v. Marriott Int'l, Inc.,*
  2019 WL 6829101 (D. Md. Dec. 13, 2019) ............................. 33

*City of Huntington v. AmerisourceBergen Drug Corp.,*
  609 F. Supp. 3d 408 (S.D.W. Va. 2022) ............................... 20, 22

*City of Huntington v. State Water Comm'n,*
  73 S.E.2d 833 (W. Va. 1953) .................................................... 32

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
  526 U.S. 687 (1999) ................................................................... 21

*City of N. Miami v. FAA,*
47 F.4th 1257 (11th Cir. 2022) ........................................ 32

*City of Olmstead Falls v. FAA,*
292 F.3d 261 (D.C. Cir. 2002) ......................................... 33

*City of Rohnert Park v. Harris,*
601 F.2d 1040 (9th Cir. 1979) ........................................ 33

*Curtis v. Loether,*
415 U.S. 189 (1974) ..................................................... 12

*Dairy Queen, Inc. v. Wood,*
369 U.S. 469 (1962) .......................................... 10, 20, 21

*Def. Indus., Inc. v. Nw. Mut. Life Ins. Co.,*
938 F.2d 502 (4th Cir. 1991) ......................................... 16

*State ex rel. Discover Fin. Servs., Inc. v. Nibert,*
744 S.E.2d 625 (W. Va. 2013) ........................................ 31

*District of Columbia v. Colts,*
282 U.S. 63 (1930) ....................................................... 14

*El Paso County v. Trump,*
982 F.3d 332 (5th Cir. 2020) ......................................... 33

*FDIC v. Marine Midland Realty Credit Corp.,*
17 F.3d 715 (4th Cir. 1994) ........................................... 17

*Gill v. Whitford,*
585 U.S. 48 (2018) ....................................................... 35

*Gnossos Music v. Mitken, Inc.,*
653 F.2d 117 (4th Cir. 1981) ......................................... 19

*Granfinanciera, S.A. v. Nordberg,*
492 U.S. 33 (1989) .......................................... 13, 21, 23

*Great-W. Life & Annuity Ins. Co. v. Knudson,*
534 U.S. 204 (2002) ............................................... 19, 21

*Harless v. Workman,*
114 S.E.2d 548 (W. Va. 1960) ........................................................... 35

*In re Lowe,*
102 F.3d 731 (4th Cir. 1996) ...................................................... 11, 37

*Mallard v. U.S. Dist. Ct.,*
490 U.S. 296 (1989) ......................................................................... 37

*Maryland Shall Issue, Inc. v. Hogan,*
971 F.3d 199 (4th Cir. 2020) ......................................................... 35

*Mayor of City of Georgetown v. Alexandria Canal Co.,*
37 U.S. 91 (1838) ...................................................................... 14, 15

*Mertens v. Hewitt Assocs.,*
508 U.S. 248 (1993) ................................................................... 16, 22

*Minneapolis & St. Louis. R. Co. v. Bombolis,*
241 U.S. 211 (1916) ........................................................................ 24

*State ex rel. Morrisey v. W. Va. Off. of Disciplinary Couns.,*
764 S.E.2d 769 (W. Va. 2014) ........................................................ 32

*In re Murphy-Brown, LLC,*
907 F.3d 788 (4th Cir. 2018) .............................................. 11, 37, 38

*In re Nat'l Prescription Opiate Litig.,*
2019 WL 4621690 (N.D. Ohio Sept. 24, 2019) ............................... 27

*In re Nat'l Prescription Opiate Litig.,*
2019 WL 4686815 (N.D. Ohio Sept. 26, 2019) ............................... 35

*Pernell v. Southall Realty,*
416 U.S. 363 (1974) ........................................................................ 14

*Perttu v. Richards,*
605 U.S. 460 (2025) ............................................................ 26, 27, 28

*R. v. White & Ward,*
97 Eng. Rep. 338 (KB 1757) ........................................................... 14

*In re Search Warrants Issued Feb. 18, 2022,*
   111 F.4th 316 (4th Cir. 2024) ............................................................ 14

*SEC v. Rajaratnam,*
   622 F.3d 159 (2d Cir. 2010) .............................................................. 37

*Simler v. Conner,*
   372 U.S. 221 (1963) .................................................................. 13, 24

*In re Simons,*
   247 U.S. 231 (1918) .......................................................................... 29

*Skippy, Inc. v. CPC Int'l, Inc.,*
   674 F.2d 209 (4th Cir. 1982) ............................................................ 18

*State v. Ehrlick,*
   64 S.E. 935 (W. Va. 1909) ................................................................ 32

*Swentek v. USAIR, Inc.,*
   830 F.2d 552 (4th Cir. 1987) ............................................................ 29

*Tights, Inc. v. Stanley,*
   441 F.2d 336 (4th Cir. 1971) ............................................................ 21

*Town of Milton v. FAA,*
   87 F.4th 91 (1st Cir. 2023) .......................................................... 32, 33

*Trump v. CASA, Inc.,*
   606 U.S. 831 (2025) ............................................................ 34, 35, 36

*Tull v. United States,*
   481 U.S. 412 (1987) ...................................................... 19, 20, 24, 25

*In re United States,*
   945 F.3d 616 (2d Cir. 2019) .............................................................. 38

*United States v. Johnson,*
   114 F.3d 476 (4th Cir. 1997) ............................................................ 31

*WEGCO, Inc. v. Griffin Servs., Inc.,*
   19 F. App'x 68 (4th Cir. 2001) ........................................................ 24

*Willson v. Black-Bird Creek Marsh Co.*,
 27 U.S. 245 (1829) ................................................................ 15

## Constitutions / Statutes / Rules

U.S. Const. amend. VII .................................................... 11, 13

28 U.S.C. § 1292(b) .............................................................. 7

Fed. R. Civ. P. 23 ............................................................... 36

## Other Authorities

2 Joseph Story, Commentaries on Equity Jurisprudence as
 Administered in England and America § 923 (1st ed. 1836) ............ 15

9 Fed. Prac. & Proc. Civ. § 2303 (4th ed. 2025) ....................... 24

66 C.J.S. Nuisances § 13 .................................................... 35

## INTRODUCTION

"In this circuit, a petition for a writ of mandamus is the proper way to challenge the denial of a jury trial." *In re Lockheed Martin Corp.*, 503 F.3d 351, 353 (4th Cir. 2007). Express Scripts seeks mandamus relief because the district court improperly denied it a civil jury trial on *legal* claims by 120 West Virginia cities, counties, and towns. Plaintiffs expressly seek *money damages* and thus their claims fall within the heartland of the Seventh Amendment's protection. *SEC v. Jarkesy*, 603 U.S. 109, 123 (2024). Mandamus independently is warranted because the court ordered a two-phase trial, first on Express Scripts' alleged *statewide* liability, and then on *statewide* relief, even though Plaintiffs do not represent the State but are instead *local governments* with standing only to sue on their behalf. This Court should grant mandamus to limit the district court "to a lawful exercise of its prescribed jurisdiction," *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004) (citation omitted), and avoid the massive waste of resources that would occur from a sprawling trial before the wrong factfinder seeking jurisdictionally unavailable relief.

1

## RELIEF SOUGHT

Express Scripts respectfully requests a writ of mandamus directing the district court to vacate its Case Management Order setting a statewide bench trial on Plaintiffs' public-nuisance claims. Add.1–6.

## ISSUES PRESENTED

1.     Whether Express Scripts has a Seventh Amendment right to a jury trial on Plaintiffs' public nuisance and other claims seeking monetary relief.

2.     Whether the district court exceeded its jurisdiction in ordering a statewide trial on Plaintiffs' public-nuisance claims.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.     Plaintiffs' Actions

On July 25, 2024, Ohio County and 10 other West Virginia local governments filed an action in the U.S. District Court for the Northern District of West Virginia ("the *Ohio County* Action") asserting claims for common law public nuisance, violations of the federal civil RICO statute, negligence, civil conspiracy, and unjust enrichment. R.Doc. 84. The complaint expressly sought monetary and equitable relief. *Id*. ¶¶855, 890, 916, 940 & p.313. Plaintiffs twice amended their complaint to add 66 other West Virginia cities, counties, and towns as plaintiffs (for a total

2

of 77 plaintiffs in the *Ohio County* Action). R.Docs. 85; 128. On May 21, 2025, Express Scripts filed its answer and jury trial demand. R.Doc. 173.

Shortly thereafter, the City of Wellsburg and 42 other West Virginia local governments—represented by the same Plaintiffs' counsel as those who filed the *Ohio County* Action—filed a complaint nearly identical to the Second Amended Complaint in the *Ohio County* Action, seeking identical forms of monetary and equitable relief. *City of Wellsburg v. Express Scripts, Inc. et al.*, No. 5:25-cv-00164-JPB (N.D.W. Va. July 23, 2025) ("*Wellsburg* Action"), ECF No. 2 ¶¶702, 737, 763, 776, 787 & p. 225. The two actions were later consolidated. Add.1.

## B. The Parties' Competing Case Management Proposals

The district court ordered the parties to submit a proposed case structure and scheduling order. R.Doc. 172 at 1. Express Scripts proposed a bellwether trial process whereby the parties would "select representative Plaintiffs for trial that fairly encompass the range of factual and legal issues present across all Plaintiffs' jurisdictions." R.Doc. 183 at 9. Plaintiffs proposed a bifurcated case structure. In Phase I, Plaintiffs' claims would be consolidated into a statewide liability trial in which they planned to rely only on "aggregate" proof. *Id.* at 3–7. In

Phase II, the parties would address "specific causation" and Defendants' affirmative defenses. *Id.*

On July 28, 2025, the Court held a hearing to discuss the competing proposals. Add.22–49. At the hearing, Plaintiffs presented the case as only "a public nuisance case." Add.30. Plaintiffs argued that, by proceeding only on public nuisance and "sever[ing]" the other claims, at Phase I they would only need to "establish that there's a statewide opioid epidemic that permeates every corner of the state." Add.26, Add.45. At Phase II, Plaintiffs argued, the parties would litigate "the question of whether or not the conduct by the defendants was a substantial factor in" causing Plaintiffs' alleged injuries. Add.26. Plaintiffs also took the position that the public-nuisance claims should be tried as a bench trial, beginning with a Phase I bench trial on statewide public-nuisance liability. Add.25.

After expressing doubt that it has "jurisdiction" to hold a statewide liability trial that would implicate the interests of absent parties, the district court asked if Plaintiffs were taking the "position that [they are] going to try [the statewide liability trial] just as the state of West Virginia." Add.27, Add.30. Plaintiffs responded in the affirmative,

4

claiming to have "authority and standing" to bring statewide claims "on behalf of the general public . . . represent[ing] the same human lives that the Attorney General would be representing." Add.26, Add.35–36. Indeed, Plaintiffs' counsel asserted that they had previously "represented the state through the counties and cities" that have filed suit. Add.38. Plaintiffs disclaimed that they were seeking to recover their own "expenditures" or "private economic losses." Add.30, Add.36.

Express Scripts opposed Plaintiffs' proposals on numerous grounds. It argued that Plaintiffs' proposal for bifurcated bench trials was a "nonstarter" because the case involved claims for which Express Scripts had an undisputed "jury trial right." Add.39. It pointed out that Plaintiffs had failed to cite a single case where a federal court had adopted such a structure. It explained that Plaintiffs lack standing to bring a statewide action on behalf of the citizenry. And it opposed the statewide Phase I trial because it would constitute a *de facto* class action outside the strictures of Federal Rule of Civil Procedure 23. Add.39–40.

## C.   The Case Management Order And Denial Of Reconsideration

The district court entered a Case Management Order (the "Order") that severed, but did not dismiss, Plaintiffs' causes of action other than

5

public nuisance and ordered bifurcated bench trials on public nuisance.

Add.1–2. At Phase I, the district court ordered it would decide two issues:

> Issue #1: Whether the Defendants engaged in wrongful conduct which caused the alleged oversupply and diversion of opio[i]ds *throughout West Virginia*; and

> Issue #2: Whether the alleged oversupply and diversion of opio[i]ds *throughout West Virginia* is a public nuisance, which is broadly defined as an unreasonable interference with a right common to the general public's health and safety.

Add.1–2 (emphases added). The district court ordered that Phase I would focus on "[g]eneral causation," which it defined as "whether Defendants caused the oversupply and diversion of opioids in West Virginia." Add.2. If "liability for public nuisance" is established, the parties would proceed to a "statewide abatement trial" in Phase II, where the issues would involve "causation of opioid epidemic harms in Plaintiffs' communities that relate to the equitable remedy of abatement." Add.2.

According to the district court, the purpose of the case structure was to promote efficiency by "avoiding the prejudice and confusion of multiple, single plaintiff trials" and relieve Plaintiffs of the burden "of trying multiple lawsuits to determine whether the Defendants are liable for public nuisance as to each city or county." Add.3. In the district court's

view, "[t]he opioid crisis is ubiquitous" and "knows no boundaries and is not limited to a specific city or county in West Virginia." Add.3.[1]

Express Scripts moved for reconsideration and, in the alternative, certification of several issues for interlocutory appeal under 28 U.S.C. § 1292(b). R.Doc. 200. Express Scripts argued the district court could not order bench trials without infringing Express Scripts' Seventh Amendment right to a jury trial because each of Plaintiffs' claims expressly seeks money damages. R.Doc. 200 at 5–10. Express Scripts also argued that the Order exceeds the district court's authority because Plaintiffs lack Article III standing and statutory authority to bring statewide representative claims on behalf of their residents or the public. R.Doc. 200 at 10–14. And Express Scripts argued a statewide trial premised on aggregate proof would constitute a *de facto* class action

---

[1] The Order also imposed restrictions on Express Scripts' ability to take meaningful discovery to defend itself—granting Plaintiffs unlimited access to dozens of depositions ongoing in the federal opioids multi-district litigation ("MDL") but limiting Express Scripts to 20 non-expert depositions across all 120 Plaintiffs. Add.3. Express Scripts sought reconsideration on those aspects of the Order, which the district court denied. R.Doc. 200 at 15–16; Add.7–21.

without any of the procedural guardrails of <u>Federal Rule of Civil Procedure 23</u>. R.Doc. 200 at 14.

While Express Scripts' reconsideration motion was pending, the West Virginia Attorney General filed a materially identical action on behalf of the State. *See West Virginia ex rel. McCuskey v. Evernorth Health, Inc., et al.*, No. 5:25-cv-00182-JPB (N.D.W. Va. Aug. 15, 2025) ("*AG* Action"), ECF No. 1. Because that action is proceeding before the same judge overseeing this action, Express Scripts requested that the district court convene a status conference with counsel for all parties to discuss how to proceed and coordinate the *Ohio County*, *Wellsburg*, and *AG* actions. R.Doc. 209. Express Scripts further requested that the Court stay the *Ohio County* / *Wellsburg* consolidated cases pending resolution of the *AG* Action. R.Doc. 209.

The district court denied Express Scripts' motions. Add.7–21. Accordingly, as of today, the *AG* Action is proceeding separately from the consolidated *Ohio County* and *Wellsburg* Actions. Add.18. The district court also held that "the Seventh Amendment does not confer a right to a jury trial in this matter" because "[a] governmental public nuisance action seeking only abatement" by injunction "is equitable in nature and,

8

therefore, outside the scope of the Seventh Amendment jury-trial guarantee." Add.10. Although the district court acknowledged Express Scripts' right to first have a jury trial on common factual issues related to Plaintiffs' other legal claims, it declined to revise the Order because "Plaintiffs' have indicated their intention to seek client authorization to dismiss their legal claims in advance of the August 202[6] bench trial" if this Court confirms the viability of their public-nuisance claim in *City of Huntington v. AmerisourceBergen Drug Corp.*, No. 22-01819 (4th Cir.)— a case by two West Virginia local governments (both of which are also Plaintiffs here) that lost at trial alleging an opioid-related public nuisance. Add.12.[2]

The district court also rejected Express Scripts' request to reconsider the statewide trial. Despite Plaintiffs' representations to the

---

[2] In *Huntington*, the district court held a bench trial on public-nuisance claims by two West Virginia local governments against opioid distributors, but only after those defendants asserted a right to a jury trial and then waived that right. *See* Defendants' Notice of Consent to Bench Trial, *City of Huntington v. AmerisourceBergen Drug Corp.*, No. 3:17-01362 (S.D.W. Va. Mar. 4, 2020), ECF No. 191. After losing at trial, the two plaintiffs dismissed their pending claims against Express Scripts in *Huntington*, *see id.*, ECF No. 1543, and then joined as Plaintiffs in this case, *see* R.Doc. 85 ¶¶121–22. The district court denied Express Scripts' motion to dismiss them. R.Doc. 140 at 44–53.

contrary, the district court held that they "are not proceeding on behalf of the State as *parens patriae*" and are not "asserting a statewide cause of action." Add.13. The court also rejected Express Scripts' arguments against statewide relief, concluding "[t]he trial plan does not purport to determine the rights of counties or municipalities that are not parties to this litigation," Add.13—even though the trial order expressly states that "[t]he Court intends to hear evidence on a single, statewide abatement remedy," Add.2. And the district court found "no merit in the argument that the trial plan amounts to a class action in disguise . . . [b]ecause non-parties are neither entitled to relief nor bound by any judgment in this case." Add.13–14.

## LEGAL STANDARD

It is "the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury." *Dairy Queen, Inc. v. Wood*, <u>369 U.S. 469, 472</u> (1962); *see Beacon Theatres, Inc. v. Westover*, <u>359 U.S. 500, 511</u> (1959) ("[T]he right to grant mandamus to require jury trial where it has been improperly denied is settled."). This Court accordingly has recognized that "a petition for a writ of mandamus is the proper way to challenge the denial of a jury

trial." *Lockheed Martin*, 503 F.3d at 353. More generally, mandamus is warranted where (1) the petitioner has a "clear and indisputable right to the requested relief"; (2) the petitioner has no other adequate means to obtain the relief sought; and (3) the writ is "appropriate under the circumstances." *In re Murphy-Brown, LLC*, 907 F.3d 788, 795 (4th Cir. 2018) (citation omitted). Correcting a district court's "unlawful exercise of jurisdiction . . . is a traditional, appropriate use of the writ." *In re Lowe*, 102 F.3d 731, 733 (4th Cir. 1996).

## REASONS THE WRIT SHOULD ISSUE

This Court should issue a writ of mandamus to correct two fundamental errors in the Order. *First*, the district court violated Express Scripts' Seventh Amendment right to a jury trial by ordering a bench trial on Plaintiffs' claims for public nuisance. *Second*, the district court exceeded its jurisdiction in ordering a statewide trial because Plaintiffs indisputably lack Article III standing to pursue—and the district court lacks authority to resolve—a public-nuisance claim on behalf of the State.

## I.   EXPRESS SCRIPTS HAS A CONSTITUTIONAL RIGHT TO A JURY TRIAL ON PLAINTIFFS' CLAIMS.

The Seventh Amendment guarantees "the right of trial by jury" in suits "at common law." U.S. Const. amend. VII. "[T]he thrust of the

Amendment was to preserve the right to jury trial as it existed in 1791." *Curtis v. Loether*, 415 U.S. 189, 193 (1974). "The right to trial by jury is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right has always been and should be scrutinized with the utmost care." *Jarkesy*, 603 U.S. at 121 (citation omitted).

Express Scripts has a clear and indisputable Seventh Amendment jury trial right on Plaintiffs' public-nuisance claims because such claims historically involved legal rights and Plaintiffs seek legal relief. In reaching the opposite conclusion, the district court fundamentally misapplied the Seventh Amendment analysis and ignored the relief Plaintiffs requested. The district court's order also curtails Express Scripts' indisputable right to a jury trial on Plaintiffs' other claims. It is undisputed that Plaintiffs' causes of action for civil RICO, negligence, and civil conspiracy, are legal claims subject to the Seventh Amendment, yet the Order presents an ongoing risk that Express Scripts' right will be lost because the resolution of the public-nuisance claim in a bench trial would involve adjudication of facts that Express Scripts has a

constitutional right to have decided by a jury. Mandamus is warranted to preserve Express Scripts' constitutional jury trial right.

### A. Plaintiffs' Public-Nuisance Claims Are Subject To The Seventh Amendment Jury Trial Right.

The Supreme Court has adopted a two-step inquiry to determine whether an action is a "[s]uit at common law" and therefore subject to the Seventh Amendment. U.S. Const. amend. VII; *see Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989). "First, [the court should] compare the . . . action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, [the court should] examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera*, 492 U.S. at 42 (citation omitted). "The second stage of this analysis is more important," *id.*, and in determining whether a "state-created claim [i]s legal or equitable," the court must look to "federal law," even if the underlying "substantive dimension of the claim asserted finds its source in state law," *Simler v. Conner*, 372 U.S. 221, 222 (1963). Here, both steps lead indisputably to the conclusion that Express Scripts has a jury trial right for Plaintiffs' public-nuisance claims.

13

### 1. Public-Nuisance Claims Are Historically Legal In Nature.

In 18th-century English courts, a "public nuisance [was] subject to criminal jurisdiction," and the mechanism for adjudicating such a suit was a "proceeding *at law*"—namely, an "indictment or information, by which the nuisance may be abated." *Mayor of City of Georgetown v. Alexandria Canal Co.*, 37 U.S. 91, 97–98 (1838) (emphasis added); *see District of Columbia v. Colts*, 282 U.S. 63, 73 (1930) (explaining that "public nuisances [were] indictable at common law" and defendants had a right to "trial by jury" in a court of law); *accord R. v. White & Ward* (1757), 97 Eng. Rep. 338, 340 (KB) ("The very existence of the nuisance depends upon . . . matter[s] of fact, to be judged of by the jury."). Having juries adjudicate public-nuisance suits followed the broader principle that criminal "rights and remedies . . . were enforced, at common law, through trial by jury." *Pernell v. Southall Realty*, 416 U.S. 363, 381 (1974). By contrast, courts of equity historically had "no jurisdiction in criminal matters [and] steered very clear of the field of crime [because] there was to be no criminal equity." *In re Search Warrants Issued Feb. 18, 2022*, 111 F.4th 316, 323 n.14 (4th Cir. 2024).

Before independence, English courts of equity interposed to enjoin public nuisances only in "confined and rare" cases involving "encroachment on the king's soil." *Georgetown*, 37 U.S. at 98. Even in those cases, equity jurisdiction "acted on with great caution and hesitancy" and thus "had lain dormant for a century and a half; that is, from Charles I[] down to the year 1795"—four years *after* the Seventh Amendment was ratified. *Id.* As Justice Story put it, "[t]he question of nuisance or not must, in cases of doubt, be tried to a jury; and the injunction will be granted or not, as that fact is decided." 2 Joseph Story, Commentaries on Equity Jurisprudence as Administered in England and America § 923, at 202–03 (1st ed. 1836). Courts of equity, moreover, recognized "that [actions] upon the ground of public nuisance . . . must be tried by a Jury . . . before an injunction should issue" and "there [was] no instance of holding [alleged misconduct] a nuisance, and therefore enjoining it, without a trial" by jury. *Att'y Gen. v. Cleaver* (1811), 34 Eng. Rep. 297, 299–300 (Ch.); *accord Willson v. Black-Bird Creek Marsh Co.*, 27 U.S. 245, 252 n.1 (1829); *Georgetown*, 37 U.S. at 98.

The first step of the Seventh Amendment analysis accordingly supports Express Scripts' assertion of a jury trial right because public-

nuisance claims were historically legal in nature and equity jurisdiction
was the exception, not the rule.

> ### 2. Plaintiffs' Public-Nuisance Claims Seek Remedies That Are Legal In Nature.

Step two of the analysis confirms Express Scripts' right to a jury
trial because Plaintiffs request legal relief for their public-nuisance
claims. Plaintiffs expressly seek "all *legal . . .* relief as allowed by law . . .
including . . . *compensatory and exemplary/punitive damages, and all
other damages allowed by law*." R.Doc. 128 ¶922 (emphasis added).
"Money damages are, of course, the classic form of *legal* relief." *Mertens
v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993); *see Jarkesy*, 603 U.S. at 123
("[M]oney damages are the prototypical common law remedy."); *Def.
Indus., Inc. v. Nw. Mut. Life Ins. Co.*, 938 F.2d 502, 506 (4th Cir. 1991)
("Over one hundred years ago the Supreme Court held that the seventh
amendment guarantees a jury determination of the amount of tort
damages."). The Seventh Amendment also "guarantees the right to a jury
determination of the amount of punitive damages." *Def. Indus., Inc.*, 938
F.2d at 507.

Plaintiffs' request for damages is "all but dispositive." *Jarkesy*, 603
U.S. at 123. It categorically triggers Defendants' Seventh Amendment

right to a jury trial, irrespective of any other relief sought by Plaintiffs. *See FDIC v. Marine Midland Realty Credit Corp.*, 17 F.3d 715, 721 (4th Cir. 1994) (where plaintiff's claim "also requests monetary relief" it is "clearly requesting a legal remedy" and therefore "presents a claim which is unquestionably legal"). Combined with the historically legal nature of public-nuisance claims, Plaintiffs' request for monetary relief guarantees Express Scripts a jury trial right.

### B. The District Court Misapplied The Seventh Amendment Analysis To Plaintiffs' Public-Nuisance Claims.

In denying Express Scripts' request for a jury trial on Plaintiffs' public-nuisance claims, the district court fundamentally misapplied the Seventh Amendment analysis. It started on the wrong foot by beginning with step two (the relief Plaintiffs seek), rather than step one (the historical nature of the action). Add.10. In doing so, the district court erroneously concluded that Plaintiffs' public-nuisance claims seek "only" an "equitable" remedy of abatement, ignoring their explicit requests for damages. Add.10. The court compounded its error by circularly holding that public-nuisance claims seeking only equitable abatement were historically equitable in nature. Add.10–12.

17

1. **The District Court Erroneously Concluded That Plaintiffs' Public-Nuisance Claims Seek Only Equitable Relief.**

The district court's Seventh Amendment analysis was wrong from the start. Beginning with the nature of the remedy sought, it found that the only "relief sought here—abatement—is an equitable remedy, distinct from damages, and thus does not implicate the jury-trial right." Add.11. That reasoning was erroneous for at least two reasons.

*First*, the record flatly contradicts the district court's finding. Plaintiffs' public-nuisance claims do not seek "only abatement" but specifically request "legal" relief, including "compensatory" damages, "exemplary/punitive" damages, and "all other damages allowed by law." R.Doc. 128 ¶922. Those damages claims have not been dismissed, and the district court is not free to disregard them. *See Skippy, Inc. v. CPC Int'l, Inc.*, 674 F.2d 209, 215 (4th Cir. 1982) (holding that a "case presented issues purely equitable in nature that could be resolved by the court without empaneling a jury" only because the district court "dismissed [plaintiff's] claims for damages leaving only claims for injunctive relief").

In fact, because Plaintiffs expressly seek damages, their additional request for abatement is largely irrelevant for Seventh Amendment

18

purposes. Plaintiffs' requests for damages alone triggers Express Scripts' jury trial right because the Seventh Amendment cannot "be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action." *Beacon Theatres*, 359 U.S. at 510 (citation omitted). And the jury "right cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought." *Tull v. United States*, 481 U.S. 412, 425 (1987) (citation omitted); *accord Gnossos Music v. Mitken, Inc.*, 653 F.2d 117, 119 (4th Cir. 1981) (holding the Seventh Amendment applies "even where the trial judge characterizes the legal issues as 'incidental' to equitable issues"). It was error for the district court to ignore Plaintiffs' clear and unequivocal requests for damages, which independently trigger Express Scripts' Seventh Amendment right.

*Second*, even assuming Plaintiffs had not expressly sought damages, the district court erred by blindly accepting Plaintiffs' characterization of their "abatement" relief as "an equitable remedy, distinct from damages." Add.11. "[A]ny claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 211 n.1 (2002). That is

19

why "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings." *Dairy Queen*, <u>369 U.S. at 477</u>–78. Rather, a court must look to the substance of the relief requested. *Id.*

Here, Plaintiffs' request for abatement is not limited to equitable relief. Both Plaintiffs and the district court acknowledged that a court may award equitable abatement only "by injunction." Add.10; R.Doc. 213 at 10–15; *see Tull*, <u>481 U.S. at 423</u>–24 (explaining "public nuisance cases brought in equity sought injunctive relief, not monetary penalties"); *City of Huntington v. AmerisourceBergen Drug Corp.*, <u>609 F. Supp. 3d 408, 483</u> (S.D.W. Va. 2022). But Plaintiffs are seeking "injunctive relief" separately from "abatement," R.Doc. 128 ¶922, and Plaintiffs' request for abatement is pecuniary, not injunctive. Their complaints explain that they seek a "judgment that the PBM Defendants *fund the abatement* of the ongoing public nuisance." R.Doc. 128 ¶911 (emphasis added). Plaintiffs have also clarified that the purpose of the "abatement" award they seek is to "compensate[] [them] for the costs of rectifying the nuisance." R.Doc. 213 at 13 (citation omitted). Thus, in substance, Plaintiffs' "abatement" remedy is nothing more than a request for a

money judgment. *See Great-W. Life*, 534 U.S. at 210 ("[S]uits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages.'" (cleaned up)); *Dairy Queen*, 369 U.S. at 477 ("[W]e think it plain that [a] claim for a money judgment is a claim wholly legal in its nature however the complaint is construed."); *Tights, Inc. v. Stanley*, 441 F.2d 336, 344 (4th Cir. 1971) (A "claim for a money judgment is legal in nature.").

Although Plaintiffs attempt to hide the true nature of their requested relief by labeling it "abatement," that does not make it so. *Dairy Queen*, 369 U.S. at 477–78. "[A]ny distinction that might exist between 'damages' and monetary relief under a different label is purely semantic, with no relevance to the adjudication of [a] Seventh Amendment claim." *Granfinanciera*, 492 U.S. at 49 n.7. Plaintiffs' admission that the purpose of their purported "abatement" is "compensation" proves crucial because "compensation is a purpose traditionally associated with legal relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710–11 (1999) (citation omitted). Thus, "[a]lthough they often dance around the word, what [Plaintiffs] in

21

fact seek is nothing other than compensatory *damages*—monetary relief for all losses" they allegedly sustained. *Mertens*, 508 U.S. at 255.

To be clear, Express Scripts maintains that Plaintiffs cannot lawfully obtain damages or other monetary relief as part of an abatement award. *See Huntington*, 609 F. Supp. 3d at 484 ("Any such monetary award—whether styled as damages or 'abatement damages'—is not properly an element of equitable abatement relief."). But so long as the district court proceeds with its plan to try a claim seeking monetary abatement, the Seventh Amendment entitles Express Scripts to a jury.

## 2. The District Court Improperly Collapsed The Two-Step Analysis Into A Single, Circular Inquiry And Looked To State Law For The Answer.

Although Plaintiffs' unequivocal request for damages and other monetary relief is dispositive of Express Scripts' jury trial right, the district court compounded the error in its Seventh Amendment analysis by (1) improperly conflating the two-step inquiry, and (2) improperly relying on state law to inform its answer.

*First*, after erroneously concluding that Plaintiffs seek only the equitable remedy of abatement, the district court concluded that "governmental actions to abate a public nuisance by injunction were

historically recognized as actions in equity." Add.10. But that is historically inaccurate; prior to the Seventh Amendment's adoption, English courts of equity typically would not grant equitable relief until a jury had first issued a verdict. *See supra* I.A.1. The district court's reasoning also "conflates the two parts of [the] Seventh Amendment inquiry." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 571 n.8 (1990). Step one looks only to the nature of the "action" to determine if it was one "ordinarily" or "customarily" brought "in English law courts in the late 18th century." *Granfinanciera*, 492 U.S. at 42 (citation omitted). The nature of the "remedy sought" in a particular case is confined to step two. *Id.* The district court misapplied that analysis by collapsing the two-part inquiry into a single, self-fulfilling question. The question is not whether a public-nuisance claim seeking a particular form of relief was historically legal or equitable; the question is whether public-nuisance claims in general were "*ordinarily*," "*customarily*," and "*typically*" brought in court of law. *Granfinanciera*, 492 U.S. at 42–44 (emphases added).

Second, the district court improperly relied almost exclusively on state-court authority to inform its circular "historical inquiry." Add.10–

23

11. For example, the court relied on a decision from the West Virginia's Mass Litigation Panel ("MLP") denying defendants' request for jury trials on materially similar public-nuisance claims to hold that "West Virginia law has long characterized public nuisance abatement actions as equitable." Add.4 (quoting *State ex rel. Amerisourcebergen Drug Co. v. Moats*, 859 S.E.2d 374, 385 (W. Va. 2021)). But "*federal* law determines whether there is a jury trial right in a case involving state law that has been brought in federal court, and . . . state law on the subject is wholly irrelevant." 9 Fed. Prac. & Proc. Civ. § 2303 (4th ed. 2025); *accord Simler*, 372 U.S. at 222 ("the jury-trial right is to be determined according to federal law"); *WEGCO, Inc. v. Griffin Servs., Inc.*, 19 F. App'x 68, 73 (4th Cir. 2001) (similar). There is good reason for this: state courts are not bound by the Seventh Amendment, *see Minneapolis & St. Louis. R. Co. v. Bombolis*, 241 U.S. 211, 217 (1916), and they are generally free to blur the lines between legal and equitable relief.

The only controlling federal authority the court cited—the Supreme Court's decision in *Tull*—confirms Express Scripts' right to a jury trial. In *Tull*, the Supreme Court considered whether a statutory claim under the Clean Water Act ("CWA") is subject to the Seventh Amendment. 481

<u>U.S. at 414</u>. The government argued that its CWA claims were equitable in nature because they were analogous to "an action to abate a public nuisance." *Id.* at 420. The Supreme Court rejected the government's argument that public-nuisance claims are primarily equitable. *Id.* at 420–21. Although the Supreme Court acknowledged that claims seeking to abate public nuisances by injunction were "classic example[s]" of claims brought in courts of equity, it reasoned that "[t]he essential function of an action to abate a public nuisance was to provide a civil means to redress . . . criminal offenses," which are legal in nature. *Id.* at 421, 423 (citation omitted). The Supreme Court then held that the Seventh Amendment jury right applies to CWA claims, from which it necessarily follows that the Seventh Amendment jury right applies to its public-nuisance analogues. *Id.* at 427.

Like the government in *Tull*, the district court fundamentally erred by focusing only on public-nuisance claims seeking equitable relief instead of looking to the "essential function" of public nuisance, which is legal in nature. If it had, it would have concluded that public nuisance was historically a common-law crime tried in courts of law and, therefore, that Express Scripts has a right to a trial by jury in this case.

25

### C. Express Scripts Has A Clear And Indisputable Right To A Jury Trial On Plaintiffs' Other Legal Claims.

The Order independently violates Express Scripts' Seventh Amendment right to jury trials on Plaintiffs' claims for negligence, civil RICO, and civil conspiracy. When a civil action "contain[s] both legal and equitable claims," a court "may not resolve equitable claims first if doing so could prevent legal claims from getting to the jury." *Perttu v. Richards*, 605 U.S. 460, 471 (2025). Instead, "district courts should structure their order of operations to preserve the jury trial right" by ensuring that a jury decides any common factual issues before the court adjudicates the equitable claims. *Id.*; *see Beacon Theatres*, 359 U.S. at 509–11.

In opposing reconsideration, Plaintiffs did not dispute that Express Scripts has a right to have a jury trial on common issues relating to Plaintiffs' claims for negligence, civil RICO, and civil conspiracy. R.Doc. 213 at 16–17. Nor did they attempt to justify the district court's decision to deny that right when it prioritized bench trials on public nuisance, effectively conceding the Order violates Express Scripts' Seventh Amendment right. *Id.* Instead, Plaintiffs insisted Express Scripts' arguments are "not ripe" because Plaintiffs *may* choose to dismiss their non-nuisance claims if this Court revives the viability of their novel

public-nuisance theory in the pending appeal in *Huntington*. *Id*. The district court accepted Plaintiffs' arguments in full, holding Express Scripts must await a decision from this Court in *Huntington* before knowing whether it will be forced to defend against Plaintiffs' fallback claims. Add.12.

That ruling is fundamentally at odds with Supreme Court precedent, which requires courts to "structure their order of operations" to allow juries to *first* try common factual issues before the court adjudicates any remaining equitable claims. *See Perttu*, 605 U.S. at 471; *Beacon Theatres*, 359 U.S. at 509–11. Here, there is clear overlap of common factual issues between Plaintiffs' public-nuisance claims and their claims of negligence, civil RICO, and civil conspiracy. As Judge Polster recognized in the federal opioids MDL involving materially similar claims, "the great majority of facts the jury will need to find to decide plaintiffs' legal claims (federal RICO . . . and civil conspiracy) are the same as those any finder of fact would have to determine to decide the nuisance claims." *In re Nat'l Prescription Opiate Litig.*, 2019 WL 4621690, at *3 (N.D. Ohio Sept. 24, 2019). For example, "facts regarding the existence of conditions that generated the alleged [harms] (e.g., the

27

alleged fraudulent marketing practices, inadequate diversion controls, and oversupply of opioids" in Plaintiffs' communities) "are also relevant to determining the conditions constituting the alleged nuisance." *Id.* "[F]acts relating to alleged intentional or unlawful conduct resulting in liability under the legal claims also inform the decision as to whether that conduct unreasonably interferes with a commonly-held public right." *Id.* And facts regarding the alleged "causal link" between Express Scripts' alleged conduct and Plaintiffs' alleged injury "involve[s] facts common to all of plaintiffs' claims." *Id.*

The district court's failure to account for Express Scripts' Seventh Amendment jury trial right on Plaintiffs' non-nuisance claims warrants mandamus relief. Because of the "importance" of "[t]he right to trial by jury," federal courts must protect against "any *seeming* curtailment of the right." *Jarkesy*, 603 U.S. at 121 (citation omitted; emphasis added). Here, the court's decision to prioritize "equitable claims first" while severing Plaintiffs' pending legal claims is "not permissible," because it "*could* prevent a full jury trial on the legal" issues by allowing the court, in a bench trial, to impermissibly resolve common factual issues. *Perttu*, 605 U.S. at 471 (citation omitted). Indeed, by preventing a jury from first

28

considering these common issues, the district court disregards its duty "to conform [any] equitable findings to a jury's verdict . . . [on] issues common to both [types of] claims, *Swentek v. USAIR, Inc.*, 830 F.2d 552, 559 (4th Cir. 1987), and invites a "collision with the Seventh Amendment." *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962).

The Order is indisputably "wrong and deprive[s]" Express Scripts of the "right to a trial by jury." *In re Simons*, 247 U.S. 231, 239–40 (1918). That "order that should be dealt with now, before [Express Scripts] is put to the difficulties and the Courts to the inconvenience that would be raised by" the district court's "mistake." *Id.*

## II. THE DISTRICT COURT EXCEEDED ITS JURISDICTION BY ORDERING A STATEWIDE TRIAL.

In addition to its erroneous deprivation of Express Scripts' Seventh Amendment right, the district court exceeded its jurisdiction in ordering a statewide trial despite the absence of any valid claims on behalf of the State in the consolidated *Ohio County* and *Wellsburg* Actions. That error provides an independent basis for mandamus relief.

29

## A.    The Statewide Trial Clearly Violates Judicial Limits.

The court's decision to order a statewide liability trial is premised on Plaintiffs' erroneous representations that they are bringing their public-nuisance claims solely on behalf of a statewide constituency. The district court accepted those arguments and ordered statewide trials. But Plaintiffs—cities and counties in West Virginia—lack Article III standing or statutory authority under West Virginia law to bring a statewide public-nuisance claim. And the court lacks jurisdiction to order relief for Plaintiffs on a statewide basis.

### 1.    Plaintiffs Lack Article III Standing To Bring Claims On Behalf Of The State And Its Citizens.

Plaintiffs have made clear that their public-nuisance claims are on behalf of the State and that they seek to "represent the same human lives that the Attorney General would be representing." Add.36. When the district court expressed doubt that it had "jurisdiction" to permit a statewide trial, Plaintiffs' counsel doubled down, assuring the court that they had previously "represented the state through the counties and cities" in the MLP. Add.38. In fact, Plaintiffs expressly disclaimed that they were seeking to recover their own "expenditures" or "private economic losses." Add.30, Add.36. Based on these representations, the

district court ordered a statewide trial on liability and a separate trial on a "statewide abatement remedy." Add.2. But as Express Scripts explained in its motion for reconsideration, the court was clearly wrong.

To satisfy Article III, a plaintiff must have a "sufficiently concrete" interest in the action "to create an actual controversy." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 602 (1982). "[P]arens patriae is a standing doctrine under which a state may under proper circumstances sue on behalf of its citizens when a separate quasi-sovereign interest also is at stake." *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997) (citing *Alfred L. Snapp*, 458 U.S. at 600–01). But the doctrine "is a quite limited one." *Id.* It confers standing upon a state to bring suit on behalf of its citizens only if there is "an independent *state* sovereign interest at stake." *Id.* (emphasis added).

West Virginia law similarly provides no basis for local governments to bring a public-nuisance claim on behalf of the State. The Attorney General has exclusive authority to assert civil claims for public nuisance on behalf of the State's citizens. *See, e.g.*, *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 744 S.E.2d 625, 642 (W. Va. 2013) ("[O]nly the Attorney General ha[s] authority to bring the civil petition in the name of the

31

State."); *State v. Ehrlick*, 64 S.E. 935, 936–37 (W. Va. 1909) (dismissing county's civil action for public nuisance). Unless expressly authorized by statute, local governments have "no [] power or authority" to bring a public-nuisance action "on the part of the state." *State ex rel. Morrisey v. W. Va. Off. of Disciplinary Couns.*, 764 S.E.2d 769, 789 (W. Va. 2014). There is no such statutory authorization here, and no legal basis for Plaintiffs to assert claims on behalf of the State. That is only clearer now that the Attorney General has brought a separate suit for the State. *See McCuskey*, *supra*; *see also City of Huntington v. State Water Comm'n*, 73 S.E.2d 833, 841 (W. Va. 1953) ("subordinate" local governments "regulate and administer . . . local and internal affairs," whereas the State regulates "those matters which are common to and concern the people at large of the State.").

Indeed, Plaintiffs do not even have standing to bring a public-nuisance suit on behalf of their *own* residents. Federal courts in this and other circuits have uniformly held that a local government lacks Article III standing to bring suit "on behalf of its citizens." *Town of Milton v. FAA*, 87 F.4th 91, 96 (1st Cir. 2023) (dismissing local government's suit on behalf of its citizens for lack of standing); *see, e.g.*, *City of N. Miami v.*

*FAA*, 47 F.4th 1257, 1277 (11th Cir. 2022) (same); *El Paso County v. Trump*, 982 F.3d 332, 338 (5th Cir. 2020) (same); *City of Olmstead Falls v. FAA*, 292 F.3d 261, 267 (D.C. Cir. 2002) (same); *City of Rohnert Park v. Harris*, 601 F.2d 1040, 1044 (9th Cir. 1979) (same); *City of Chicago v. Marriott Int'l, Inc.*, 2019 WL 6829101, at *3 (D. Md. Dec. 13, 2019) (same); *Bd. of Sup'rs of Warren Cnty. v. Va. Dep't of Soc. Servs.*, 731 F. Supp. 735, 741 (W.D. Va. 1990) (same). It must allege a "concrete harm" to *its own* interests. *Milton*, 87 F.4th at 98.

Faced with their lack of standing, Plaintiffs "attempt[ed] an end-run around this body of case law by disclaiming any intent to represent" the State or their residents as *parens patriae*. *Id.* at 96–97. In opposing Express Scripts' motion for reconsideration, Plaintiffs claimed instead that "each Plaintiff" is bringing its "own individual claim." R.Doc. 213 at 17–18. The district court accepted Plaintiffs' new position without question and denied reconsideration of its order setting a statewide trial. Add.13. But Plaintiffs' about-face underscores that there is no basis to hold a statewide trial. As Plaintiffs now concede, they are not the State, and they do not (and cannot) represent the interests of the State or its citizens.

### 2.     The District Court Lacks Jurisdiction To Issue Statewide Relief.

Federal courts are constrained by Article III and the Judiciary Act of 1789 to adjudicating only those cases properly before them and granting relief only to the parties to such cases. *See Trump v. CASA, Inc.*, 606 U.S. 831, 844 (2025) ("It is an elementary principle that a court cannot adjudicate directly upon a person's right without having him either actually or constructively before it.") (citation omitted). The district court exceeded its jurisdiction here by ordering a statewide trial "on a single, statewide abatement remedy," Add 2, for Plaintiffs' public-nuisance claims when no statewide case or controversy is before it. Plaintiffs did not (and cannot) allege harm on behalf of the State. *See supra* II.A. Throughout their complaint, Plaintiffs allege particularized injuries to their communities, not a statewide nuisance or statewide injury. For example, they allege that "*the Plaintiffs' Communities* were being flooded with an oversupply of these dangerous drugs," R.Doc. 128 ¶495 (emphasis added), and they seek relief for the public nuisance that Defendants allegedly "created, contributed to, and/or maintained *in Plaintiffs' Communities*." R.Doc. 128 ¶910 (emphasis added). "What might be a nuisance in one locality might not be so in another; and,

34

conversely, what might not be a nuisance in one place may become a nuisance in another." *Harless v. Workman*, <u>114 S.E.2d 548, 553</u>–54 (W. Va. 1960) (quoting 66 C.J.S. *Nuisances* § 25). Because Plaintiffs do not, and cannot, allege harm on behalf of the entire state, the court cannot order a statewide trial or grant statewide relief. *See CASA*, <u>606 U.S. at 844</u>; *Gill v. Whitford*, <u>585 U.S. 48, 73</u> (2018) (rejecting plaintiffs' claim of "statewide injury" and cautioning "that 'standing is not dispensed in gross': A plaintiff's remedy must be tailored to redress the plaintiff's particular injury.") (citation omitted).

The court's reliance on federal and state MDL precedent to justify statewide proceedings was wrong. Add.2. The federal MDL court never conducted a statewide liability trial; it employed traditional bellwether trials focused on individual plaintiffs' specific claims—an approach that differs fundamentally from the sweeping statewide adjudication ordered here. *In re Nat'l Prescription Opiate Litig.*, <u>2019 WL 4686815</u>, at *2 (N.D. Ohio Sept. 26, 2019) (noting the success of the bellwether process in reaching "global resolution" of claims). And state MDL proceedings have no relevance because Article III does not apply in state court. *Maryland Shall Issue, Inc. v. Hogan*, <u>971 F.3d 199, 219</u> (4th Ci<u>r. 2020</u>) ("Standing

to sue in any Article III court is a federal question which does not depend on the party's standing in state court.") (cleaned up).

The statewide trial structure also treats this case as if it were a class action in which the particular Plaintiffs in this case can act on behalf of everyone in West Virginia. *See* Add.9 ("The Court's reference to a 'statewide' trial reflects the aggregate nature of the proof, recognizing that the opioid epidemic has become a pervasive public harm affecting the vast majority of West Virginia."). Yet Plaintiffs neither pleaded nor moved for class certification, and the court has not certified a class under Federal Rule of Civil Procedure 23. It is accordingly clear error to treat this case as if it were a class action. *See CASA*, 606 U.S. at 849 ("A properly conducted class action . . . can come about in federal courts in just one way—through the procedure set out in Rule 23.") (citation omitted). By "forging a shortcut to relief that benefits parties and nonparties alike," the Order "circumvent[s] Rule 23's procedural protections." *Id.* (citation omitted).

### B.    Mandamus Is Appropriate Under The Circumstances.

The erroneous Order requiring a statewide trial satisfies the requirements for mandamus. *First*, Express Scripts' right to relief is

"clear and indisputable" because the district court's statewide trial rests on multiple, clearly "erroneous view[s] of the law." *SEC v. Rajaratnam*, 622 F.3d 159, 171 (2d Cir. 2010) (citation omitted); *In re Murphy-Brown*, 907 F.3d at 797 (granting mandamus where petitioner "demonstrated a 'clear and indisputable' right to relief" from order "breach[ing] basic [constitutional] principles"). As explained above, the district court clearly exceeded its authority in awarding a statewide trial because Plaintiffs lack standing to sue on behalf of the State and the district court lacks authority to issue relief beyond the parties before it. *See supra* II.A–B.

*Second*, Express Scripts has "no other adequate means to attain the relief" it seeks. *Cheney*, 542 U.S. at 380. Absent mandamus relief, Express Scripts must submit to a statewide trial on claims that Plaintiffs lack Article III standing to bring and the district court lacks authority to adjudicate. This Court and others have consistently recognized that correcting such an "unlawful exercise of jurisdiction" falls within the proper office of mandamus. *In re Lowe*, 102 F.3d at 733; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 308-09 (1989) (mandamus warranted to reverse district court that "plainly acted beyond its jurisdiction"); *In re Bituminous Coal Operators' Ass'n, Inc.*, 949 F.2d 1165, 1168 (D.C. Cir.

37

1991) (mandamus available where order "exceeds the limits of the district court's . . . authority" under Article III).

*Third*, the writ is appropriate under the circumstances. The statewide trial order is so fundamentally at odds with Article III that the parties have not been able to identify any analogous federal authority supporting the district court's conclusion. It therefore "presents a novel and significant question of law or a legal issue whose resolution will aid in the administration of justice." *In re United States*, 945 F.3d 616, 628 (2d Cir. 2019) (cleaned up). And it will undermine the rights of other litigants who "may be involved in future legal proceedings," by creating a novel precedent for statewide trials by plaintiffs who lack standing to bring them, against defendants who are unable to defend them. *In re Murphy-Brown*, 907 F.3d at 802. Mandamus is appropriate to correct the district court's unprecedented order directing a statewide trial.

## CONCLUSION

For the foregoing reasons, the Court should issue a writ of mandamus directing the district court to vacate its Order.

Respectfully submitted, this 22nd day of October, 2025.

<div style="display:flex;justify-content:space-between">

| | |
|---|---|
| | */s/ Christopher G. Michel* |
| Charles R. Bailey | Christopher G. Michel |
| Justin C. Taylor | Michael J. Lyle |
| BAILEY & WYANT, PLLC | Jonathan G. Cooper |
| 500 Virginia St. E, Suite 600 | QUINN EMANUEL URQUHART |
| P.O. Box 3710 | & SULLIVAN, LLP |
| Charleston, WV 25337 | 1300 I St. NW, Suite 900 |
| (304) 345-4222 | Washington, DC 20005 |
| cbailey@baileywyant.com | (202) 538-8000 |
| jtaylor@baileywyant.com | christophermichel@quinnemanuel.com |
| | mikelyle@quinnemanuel.com |
| | jonathancooper@quinnemanuel.com |

</div>

William J. Ihlenfeld
Maximillian F. Nogay
FLANNERY GEORGALIS, LLC
400 Fort Pierpont Dr., Suite 201
Morgantown, WV 26508
(304) 308-6699
wihlenfeld@flannerygeorgalis.com
mnogay@flannerygeorgalis.com

*Counsel for Petitioners*

39

## CERTIFICATE OF COMPLIANCE

This Petition complies with the requirements of <u>Federal Rule of Appellate Procedure 21(d)</u> because, excluding accompanying documents and the parts of the petition exempted by Rule 32(f), it contains 7,752 words. This petition complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Christopher G. Michel*

DATED: October 22, 2025.                 Christopher G. Michel

## CERTIFICATE OF SERVICE

I certify that on October 22, 2025, I electronically filed this petition with the Clerk of the Court using the CM/ECF system. I further certify that on this day I caused a copy of this petition to be served, via FedEx, upon the district court and all counsel of record:

> Honorable John Preston Bailey
> United States District Court for the
> Northern District of West Virginia
> 1125 Chapline Street
> P.O. Box 551
> Wheeling, West Virginia 26003
>
> Paul T. Farrell, Jr., Esq.
> FARRELL & FULLER, LLC
> 270 Muñoz Rivera Avenue, Suite 201
> San Juan, Puerto Rico 00918
> paul@farrellfuller.com
>
> Robert P. Fitzsimmons, Esq.
> FITZSIMMONS LAW FIRM PLLC
> 1609 Warwood Avenue
> Wheeling, WV 26003
> bob@fitzsimmonsfirm.com
>
> Anthony J. Majestro, Esq.
> POWELL & MAJESTRO PLLC
> 405 Capitol Street, Suite P-1200
> Charleston, WV 25301
> amajestro@powellmajestro.com

DATED: October 22, 2025        */s/ Christopher G. Michel*
                                            Christopher G. Michel