# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT
## Case No. 25-2281

---

*IN RE EXPRESS SCRIPTS, INC.,*

Petitioner.

---

On Appeal from the United States District Court
For the Northern District of West Virginia
Case No. 5:24-cv-142-JPB

---

## RESPONSE TO PETITION FOR A
## WRIT OF MANDAMUS

---

Anthony J. Majestro
Christina L. Smith
**POWELL & MAJESTRO PLLC**
405 Capitol Street, Suite 807
Charleston, WV 25301
amajestro@powellmajestro.com
csmith@powellmajestro.com

Paul T. Farrell, Jr.
Michael J. Fuller, Jr.
**FARRELL & FULLER LLC**
270 Munoz Rivera Avenue
Suite 201
San Juan, Puerto Rico 00918
paul@farrellfuller.com
mike@farrellfuller.com

Robert P. Fitzsimmons
Clayton J. Fitzsimmons
Mark A. Colantonio
Christine Pill Fisher
**FITZSIMMONS LAW FIRM PLLC**
1609 Warwood Avenue
Wheeling, WV 26003
bob@fitzsimmonsfirm.com
clayton@fitzsimmonsfirm.com
mark@fitzsimmonsfirm.com
christy@fitzsimmonsfirm.com

**Counsel for Respondents, Ohio County Commission, *et al.***

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................i

TABLE OF AUTHORITIES................................................iii

INTRODUCTION ...............................................................1

ISSUES PRESENTED ........................................................4

STATEMENT OF FACTS AND PROCEDURAL HISTORY.............4

LEGAL STANDARD ..........................................................8

ARGUMENT......................................................................10

I. THE TRIAL PLAN DOES NOT IMPLICATE THE
   SEVENTH AMENDMENT ....................................................10

   A. The defendants do not have a right to a jury trial in a
      governmental public nuisance action seeking only
      abatement...........................................................10

      1. Governmental public nuisance actions seeking
         abatement historically were brought in courts
         of equity.........................................................12

      2. Abatement is an equitable remedy..............................19

   B. The cases to the contrary are either distinguishable or
      unpersuasive .....................................................22

   C. The existence of legal claims in Plaintiffs' complaint
      which are in the process of being dismissed is not
      fatal to the trial plan.........................................26

II.  THE DISTRICT COURT'S TRIAL PLAN DOES NOT WARRANT THE EXTRAORDINARY RELIEF OF MANDAMUS ........................................................................29

    A. The District Court did not exceed its authority or act beyond its jurisdiction because the trial plan does not convert plaintiffs' individual claims to statewide claims for public nuisance or seek to issue statewide relief....................................................................................29

    B. ESI has failed to satisfy its exceptionally high burden of establishing the extraordinary circumstances that warrant mandamus..........................33

CONCLUSION ...................................................................................36

CERTIFICATE OF COMPLIANCE ...................................................38

CERTIFICATE OF SERVICE............................................................39

# TABLE OF AUTHORITIES

## Cases

*Allied Chemical Corp. v. Daiflon, Inc.*,
449 U.S. 33 (1980)............................................................. 9,34-35

*Attorney-General v. Birmingham Council*,
70 Eng.Rep. 220 [4 K.&J. 528] (1858) ............................. 18

*Bankers Life & Casualty Co. v. Holland*,
346 U.S. 379 (1953)............................................................ 8-9

*Bennis v. Michigan*,
516 U.S. 442, 116 S. Ct. 994, 134 L. Ed. 2d 68 (1996) .... 20

*Chauffeurs, Teamsters and Helpers, Local No. 391
v. Terry,* 494 U.S. 558 (1990)............................................ 12

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004)........................................................... 1,8-9

*Citizens for Alternatives to Radioactive
Dumping v. CAST Transportation, Inc.*,
No. CV 99-321 MCA/ACT, 2004 U.S. Dist.
LEXIS 34843 (D.N.M. Sept. 30, 2004)............................. 21

*City of Huntington, W. Va. v. AmerisourceBergen
Drug Corp.*, 2025 U.S.App. LEXIS 28199
(Oct. 28, 2025).................................................... *passim*

*City of New York v. Beretta, U.S.A. Corp.*,
312 F. Supp.2d 411 (E.D.N.Y. 2004)................................ 24,26

*Com. v. United Food Corp.*,
374 Mass. 765, 374 N.E.2d 1331 (1978) .......................... 22

*Conner v. City of Santa Ana,*
897 F.2d 1487 (9th Cir. 1990) ......................................... 10,21

*De Beers Consolidated Mines v. U.S.,*
325 U.S. 212 (1945)........................................................ 8

*Earl of Ripon v. Hobart,*
40 E.R. 65, 68-70 (1834) ................................................ 16,18

*In re Asbestos Prods. Liab. Litig. (No. VI),*
718 F.3d 236 (3d Cir. 2013) ........................................... 34

*In re City of Virginia Beach,*
42 F.3d 881 (4th Cir. 1994) ............................................ 34

*In re Debs,*
158 U.S. 564 (1895)........................................................ 18

*In re Nat'l Prescription Opiate Litig.,*
No. 1:17-MD-2804,  2019 U.S. Dist. LEXIS 144585
(N.D. Ohio Aug. 26, 2019) ............................................. 20

*In re Nat'l Prescription Opiate Litig.,*
No. 1:17-MD-2804, 2019 U.S.Dist. LEXIS 150562
(N.D. Ohio Sept. 4, 2019)............................................... 19

*In re Nat'l Prescription Opiate Litig.,*
No. 1:17-MD-2804, 2019 U.S. Dist. LEXIS 163272
(N.D. Ohio Sept. 24, 2019).............................................. 25

*In re Nat'l Prescription Opiate Litig.,*
No. 1:17-MD-2804, 2019 U.S. Dist.LEXIS 165494
(N.D. Ohio Sept. 26, 2019).............................................. 19

*In Re: National Prescription Opiate Litigation,*
MDL No. 2804, Order Denying Transfer and
Vacating Conditional Transfer Order
 (JPML, April 08, 2022), Dkt. No. 9586.......................... 4

*In re Nat'l Prescription Opiate Litig.*,
No. 1:17-MD-2804, 2024 WL 3387288, at *11
(N.D. Ohio Mar. 18, 2024) ................................................. 4

*In re Quinteros*,
721 F. App'x 234 (3d Cir. 2018)........................................ 29

*In re Ralston Purina Co.*,
726 F.2d 1002 (4th Cir. 1984) ........................................ 3,9,35

*In re Strickland*,
87 F.4th 257 (4th Cir. 2023)............................................ 35

*Kerr v. United States Dist. Court,*
426 U.S. 394 (1976)......................................................... 9,33

*King v. Commonwealth,*
194 Ky. 143, 238 S.W. 373 (1922) ................................... 22

*McMechen v. Hitchman-Glendale Consol. Coal Co.,*
8 W. Va. 633, 107 S.E. 480 (1921)................................... 13

*Michigan v. U.S. Army Corps of Engineers,*
667 F.3d 765 (7th Cir. 2011) ............................................ 20

*Mugler v. Kansas,*
123 U.S. 623 (1887)......................................................... 19,22-23

*Nat'l Ass'n For the Advancement of Colored
People v. Acusport Corp.,*
226 F. Supp. 2d 391 (E.D.N.Y. 2002).............................. 21

*New York v. W. Side Corp.*,
790 F. Supp. 2d 13 (E.D.N.Y. 2011)................................. 20

*Ohio County Commission, et al. v. Express Scripts, Inc.,*
5:24-cv-00142 (Oct 1, 2025), Dkt. 222............................. 7

*Orange Cty. Water Dist. v. Unocal Corp.,*
No. SACV0301742CJCANX,
2016 U.S. Dist. LEXIS 193938
(C.D. Cal. Nov. 3, 2016) .................................................... 20

*People v. ConAgra Grocery Prod. Co.*
17 Cal. App. 5th 51, 227 Cal. Rptr. 3d 499
(Ct. App. 2017) ................................................................. 17

*Pennsylvania v. The Wheeling and Belmont Bridge Co.,*
54 U.S. 518 (1851) ............................................................. 18

*Pompano Horse Club v. State,*
93 Fla. 415, 111 So. 801 (1927) ....................................... 22

*Porter v. Warner Holding Co.,*
328 U.S. 395, 66 S. Ct. 1086, 90 L. Ed. 1332 (1946) ....... 23

*San Diego Unified Port Dist. v. Monsanto Co.,*
No. 15CV578-WQH-JLB, 2018 U.S. Dist. LEXIS 149485
(S.D. Cal. Aug. 30, 2018) ................................................ 20

*Schlagenhauf v. Holder,*
379 U.S. 104 (1964) ........................................................... 9

*Simler v. Conner,*
372 U.S. 221 (1963) ......................................................... 10

*Skippy, Inc. v. CPC Int'l, Inc.,*
674 F.2d 209 (4th Cir. 1982) ........................................... 27

*State ex rel. Miller v. Anthony*,
72 Ohio St.3d 132, 647 N.E.2d 1368 (1995) ................... 22

*State ex rel. Wilcox v. Ryder,*
126 Minn. 95, 147 N.W. 953 (1914) ................................ 22

*Steelworkers v. United States,*
361 U.S. 39, 80 S.Ct. 1, 4 L.Ed.2d 12 (1959)................... 12

*Stringfellow v. Concerned Neighbors in Action,*
480 U.S. 370 (1987)............................................................ 34

*Town of Weston v. Ralston,*
8 W. Va. 170, 36 S.E. 446 (1900)..................................... 13

*Tull v. United States,*
481 U.S. 412 (1987)........................................... *passim*

*United States v. Apex Oil Co.,*
579 F.3d 734 (7th Cir. 2009) ............................................ 24

*United States v. Price,*
688 F.2d 204 (3d Cir. 1982)............................................. 24

*United States v. Wade,*
653 F. Supp. 11 (E.D. Pa. 1984) ...................................... 21

*W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.,*
208 F. Supp. 3d 1227 (N.D. Ala. 2016) ........................... 20

*State ex rel. Amerisourcebergen Drug Corp. v. Moats,*
245 W. Va. 431, 859 S.E.2d 374 (2021)........................... 14

*State ex rel. AmerisourceBergen Drug Corp. v. Moats,*
Order Denying Petition for Writ of Prohibition,
Docket No. 21-0986 (W. Va., March 21, 2022) ................ 2

*Wedel v. United States,*
2 F.2d 462 (9th Cir. 1924) ................................................ 19

*Will v. United States,*
389 U.S. 90 (1967)............................................................. 8

## Constitutions, Statutes, and Rules

U.S. Const. Amend. VII ................................................... *passim*

18 U.S.C. § 1961, et seq. ................................................. 7

Fed.R.Civ.Pro. 39(a)(2) .................................................. 11

Fed R.Civ.Pro. 39(c) ................................................. 16-17

Fed R.Civ.Pro. 56 ......................................................... 16

W.Va. Code § 7-1-3kk ..................................................... 30

W.Va. Code § 8-12-5(13) .................................................. 30

W.Va. Code § 8-12-5(22) .................................................. 30

## Treatises, Publications

3 W. Blackstone, *Commentaries on the Laws of England,* (1765) ................................................. 15

James, *Right to a Trial in Civil Actions,*
72 Yale L.J. 655 (1963) ..................................................... 15

Langbein, *Fact Finding in the English Court of Chancery: A Rebuttal,* 83 Yale L.J. 1620 (1974)............. 15-16

Pomeroy, *A Treatise On Equity Jurisprudence,*
(1st ed. 1881) ................................................... 14

Spence, *The Equitable Jurisdiction of the Court of Chancery* ...................................................... *16*

Spencer, *Public Nuisance- A Critical Examination,*
48 Cambridge Law Journal 55, 66- 73 (1989) ................. 14

2 Story, *Commentaries on Equity Jurisprudence*
(5th ed. 1849) ................................................................. 12,17,22

Wood, *A Practical Treatise on the Law of*
*Nuisances in their Various Forms* (1st ed. 1875) .............. 12

# INTRODUCTION

Mandamus is a "drastic and extraordinary" remedy that is "reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). The Express Scripts Petitioners ("ESI"), however, wrongly believe any discretionary ruling against them – including ones that are not even ripe – justifies interlocutory appellate review.[1] ESI seeks to vacate a case management and trial plan order issued by the District Court pursuant to its broad discretion to efficiently manage this complex litigation. Thus, the rulings ESI seeks to have this Court review involve run-of-the-mine case management orders for which the exceptional circumstances that justify mandamus are absent.

---

[1] The opioid litigation in federal court is primarily being overseen by United States District Judge Dan A. Polster in the multi-district litigation pending in the United States District Court for the Northern District of Ohio. *In Re: National Prescription Opiate Litigation*, No. 1:17-md-02804-DAP (N.D. Ohio) ("MDL"). In the two years that the parties have been actively litigating the PBM opioid claims, this is the fourth time ESI has sought mandamus from the courts of appeals including three writs filed in the Sixth Circuit challenging the MDL court's interlocutory rulings. *See* No. 23-3882 (6th Cir. 2023); No. 23-2006 (6th Cir. 2024); No. 25-3429 (6th Cir. 2025). ESI has yet to be successful in any of the writs it has filed.

Apart from Petitioner's heavy burden, the challenged case management order and trial plan make sense. The District Court's trial plan properly bifurcates this action into manageable phases consistent with other courts handling complex litigation and was modeled after the trial plan utilized by the West Virginia Mass Litigation Panel ("W. Va. MLP"), which led to the efficient management and resolution of the entire West Virginia state court consolidated opioid litigation.

Just two weeks ago, this Court relied on decisions by the W. Va. MLP in *City of Huntington, W. Va. v. AmerisourceBergen Drug Corp.*, No. 22-1819, 2025 U.S. App. LEXIS 28199 (4th Cir. Oct. 28, 2025), to vacate another District Court's order that found against two West Virginia local governments claiming public nuisance similar to what Respondents assert below. *Id.* The W. Va. MLP's nearly identical trial plan in a previous consolidated case against the opioid distributors was also unsuccessfully challenged through an extraordinary writ in the Supreme Court of Appeals of West Virginia, based on similar grounds to those expressed by Express Scripts here. *State ex rel. AmerisourceBergen Drug Corp. v. Moats, Order Denying Petition for Writ of Prohibition*, No. 21-0986 (W. Va., March 21, 2022).

Finally, the District Court's trial plan neither implicates Express Scripts' Seventh Amendment rights nor prejudices Express Scripts' procedural or substantive rights. The trial plan also does not convert Plaintiffs' individual claims into an action on behalf of the State or purport to impose statewide relief. Any reference to "statewide" matters in the District Court's trial plan merely refers to the kind of evidentiary proof Plaintiffs can submit in Phase I to establish Express Scripts' fault and general causation as to the existence of a nuisance.

This Court has made clear that before a writ should issue in a case in which the matter at-hand is entrusted to the discretion of the district court, such as the present case management order, the lower court's abuse of discretion must amount to a "judicial usurpation of power." *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984). But here, the District Court did not exceed its jurisdiction or act beyond its authority. Express Scripts has further failed to carry its heavy burden of establishing it has an indisputable right to the relief sought and no other adequate remedies are available through appeal. Simply put, this is not an extraordinarily rare case where mandamus is warranted. Express Scripts' Petition should be denied.

## ISSUES PRESENTED

Whether the District Court's trial plan order constitutes a judicial usurpation of power or a clear abuse of discretion by either (1) setting a bench trial on Plaintiffs' equitable claim for the abatement of a public nuisance or (2) exercising its discretion to bifurcate this complex litigation such that it justifies the drastic and extraordinary remedy of mandamus.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

This consolidated litigation is part of "one of the most complicated collections of cases in history." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2024 WL 3387288, at *11 (N.D. Ohio Mar. 18, 2024).[2] Plaintiffs here, one hundred and twenty (120) cities, towns, and counties across West Virginia, who collectively represent ninety-seven percent (97%) of the population and geographical areas of West Virginia, seek to

_____

[2] The opioid litigation in federal court was initially litigated in the MDL, but in April 2022, two years prior to the filing of these cases, the Judicial Panel on Multidistrict Litigation ("JPML") ordered that additional plaintiffs would not be added to the MDL going forward. *In Re: National Prescription Opiate Litigation*, MDL No. 2804, Order Denying Transfer and Vacating Conditional Transfer Order (JPML, April 08, 2022), No. 9586.

hold ESI accountable for its role in the opioid epidemic by flooding West Virginia with excessive quantities of deadly prescription opioids that addicted and destroyed their communities. Plaintiffs assert public nuisance claims against ESI seeking the equitable remedy of abatement pursuant to statutory authority granted to them by the West Virginia legislature to abate public nuisances within their respective jurisdictions.[3]

Acting within its broad authority and discretion to manage this complex litigation, the District Court below ordered a bifurcated bench trial on Plaintiffs' equitable public nuisance claims staging the litigation into manageable phases. Pet. Add. at 3-4. This trial plan follows the trial plan implemented by the W. Va. MLP in the West Virginia state consolidated opioid litigation involving West Virginia local governments against other opioid-related defendants. *In re: Opioid Litigation*, Civil Action No. 19-C-9000 (Cir. Ct. Kanawha Cty., W.Va.) ("W.Va. MLP"). The W. Va. MLP trial plan also survived repeated challenges made to the

---

[3] This Court recently held that public nuisance claims brought on behalf of local governments can be predicated upon the distribution of prescription opioids. *Huntington*, 2025 U.S. App. LEXIS 28199 at *35-36.

West Virginia Supreme Court of Appeals asserting many of the same arguments Express Scripts raises here. *W. Va. ex rel. AmerisourceBergen Drug Corp. v. Moats*, Petition for Writ of Prohibition, Docket No. 21-0986 (W. Va., Dec. 7, 2021); *id.*, Order Denying Petition for Writ of Prohibition, Docket No. 21-0986 (W. Va., March 21, 2022).

The first phase of the trial plan consists of two narrow—but predicate—findings focused on common issues relating to (1) whether Express Scripts' conduct was wrongful under applicable West Virginia public nuisance law; and (2) whether there is a public nuisance as a result of the oversupply of opioids. Pet. Add. at 3-4. The District Court limited the determination of causation in Phase I to general causation and set a trial date of August 4, 2026, for the Phase I trial, which will be the first opioid related trial against ESI in the country. *Id.* at 3. If Plaintiffs prevail, then other trial phases will focus on other elements of Plaintiffs' claims and ESI's defenses, such as specific causation and abatement, where liability will be determined. *Id.* at 16. The District Court reasoned this bifurcated approach will promote judicial economy because it will only require the parties and court to expend the time, burden, and

expense of significant discovery related to specific causation and other elements of liability in the event Plaintiffs prevail in Phase I. *Id.* at 12.

The District Court also severed and stayed all Plaintiffs' claims other than public nuisance.[4] Plaintiffs have represented they would dismiss all claims other than public nuisance, but this dismissal was deferred until after this Court in *Huntington* confirmed the existence of the legal viability of a public nuisance claim. *Ohio County Commission, et al. v. Express Scripts, Inc.*, 5:24-cv-00142 (Oct 1, 2025), No. 222 at 6. Plaintiffs' counsel are currently in the process of obtaining client approval to dismiss all claims except public nuisance (along with all claims for damages) and anticipate dismissing these claims well before the Phase I trial on August 4, 2026. Both Plaintiffs and the District Court recognize that, under Seventh Amendment jurisprudence, a bench trial on their equitable public nuisance claims cannot proceed unless these other legal claims are dismissed.

---

[4] Plaintiffs' complaints also assert claims for negligence, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq., civil conspiracy, and unjust enrichment. Docs. 84, 85, 128.

ESI points out (at8) that the West Virginia Attorney General brought a case against ESI on August 15, 2025, over a year after these Plaintiffs first filed suit. As of today, the only activity in the case is a stipulation extending the time for ESI to file an answer or a motion to dismiss. No. 5:25-cv-00182-JPB, Doc. 18 (N.D. W.Va.). The State did not seek a stay of these cases, and no party in either case has sought consolidation.

## LEGAL STANDARD

"[O]nly exceptional circumstances amounting to a judicial 'usurpation of power,'" *Will v. United States,* 389 U.S. 90, 95 (1967)*,* or a "clear abuse of discretion," *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 383 (1953), "will justify the invocation of [the] extraordinary remedy" of mandamus. *Will,* 389 U.S. at 95; *see also De Beers Consolidated Mines v. U.S.*, 325 U.S. 212, 217 (1945). As the writ is one of "the most potent weapons in the judicial arsenal" three conditions must be satisfied before it may issue. *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (cleaned up). First, "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires"—a condition designed to ensure that the writ will not

8

be used as a substitute for the regular appeals process. *Id.* (quoting *Kerr*, 426 U.S. at 403) (citations omitted).

Second, the petitioner must satisfy "the burden of showing that [his] right to issuance of the writ is "clear and indisputable." *Id.* (quoting *Kerr*, 426 U.S. at 403 (quoting *Bankers Life*, 346 U.S. at 384)). This requires "considerably more strained circumstances than does a mere abuse of discretion." *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).

Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances. *Cheney*, 542 U.S. at 381 (citing *Kerr,* 542 U.S. at 403 (citing *Schlagenhauf v. Holder,* 379 U.S. 104, 112, n. 8, (1964)). In this regard, before the writ should issue in a case in which the matter at hand is entrusted to the discretion of the district court, the district court's abuse of discretion must amount to a "judicial usurpation of power." *In re Ralston Purina Co.*, 726 F.2d at 1005 (quoting *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980).

# ARGUMENT

## I. THE TRIAL PLAN DOES NOT IMPLICATE THE SEVENTH AMENDMENT.

### A. The defendants do not have a right to a jury trial in a governmental public nuisance action seeking only abatement.

The right to a jury trial in federal court is governed by the Seventh Amendment which provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."[5] While state law is not entirely irrelevant to the inquiry, the ultimate question is still one of federal law: "In diversity cases, of course, the substantive dimension of the claim asserted finds its source in state law, ... but the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law."[6]

District courts are directed to conduct a bench trial if they "fin[d] that on some or all of those issues there is no federal right to a jury

---

[5] U.S. Const. amend. VII.

[6] *Simler v. Conner,* 372 U.S. 221, 222 (1963).

trial."[7] In *Tull v. United States*, the Supreme Court found that a jury trial is required only in actions that are analogous to "[s]uits at common law" at the time of the adoption of the Seventh Amendment.[8] The determination is whether a claim "is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty."[9] This test examines "both the nature of the action and of the remedy sought."[10] The first part of the test requires the court to compare the claim "to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity."[11] The second part of the test requires the examination of "the remedy sought and determine whether it is legal or equitable in nature."[12]

---

[7] Fed. R. Civ. Pro. 39(a)(2).

[8] *Tull v. United States,* 481 U.S. 412, 417 (1987).

[9] *Id.* At 417-18.

[10] *Id.*

[11] *Id.*

[12] *Id.* at 18.

Modern Supreme Court jurisprudence emphasizes that "[t]he second inquiry is the more important in [the Court's] analysis."[13]

### 1. Governmental public nuisance actions seeking abatement historically were brought in courts of equity.

In applying the first part of the *Tull* test, one need not look further than *Tull*:

> *A public nuisance action was a classic example of the kind of suit that relied on the injunctive relief provided by courts in equity.* Prosser 603. "Injunctive relief [for enjoining a public nuisance at the request of the Government] is traditionally given by equity upon a showing of [peril to health and safety]." *Steelworkers v. United States*, 361 U.S. 39, 61, 80 S.Ct. 1, 186, 4 L.Ed.2d 12 (1959) (Frankfurter, J., concurring).[14]

As the commentators at the time noted, governmental actions to abate a public nuisance by injunction were historically recognized as actions in equity.[15]

---

[13] *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 565 (1990).

[14] *Tull,* 481 U.S. at 423 (emphasis added).

[15] 2 Story, *Commentaries on Equity Jurisprudence* §§923-924 (5th ed. 1849); Wood, *A Practical Treatise on the Law of Nuisances in their Various Forms* §769, 812 (1st ed. 1875).

As noted above, state law provides the substantive dimension of the claim asserted. Here, West Virginia law has long characterized public nuisance abatement actions as equitable. In 1900, the Supreme Court of Appeals held: "Courts of equity have an ancient and unquestionable jurisdiction to prevent or abate public nuisance, and this alone would give jurisdiction, even if it had not been decided that this was a public nuisance."[16] Similarly, the Court in *McMechen v. Hitchman-Glendale Consol. Coal Co.,* recognized that "[a] court of equity, having jurisdiction in such case to abate the nuisance, may assess, and enter a decree for, such damages, . . . the jurisdiction so to do [being] merely incidental to the exercise of the jurisdiction to abate the nuisance."[17]  In the context of the opioid litigation, the Supreme Court of Appeals rejected a writ of prohibition by other opioid defendants after the MLP sought to hold a bench trial on public nuisance claims seeking only abatement noting:

> As to the issue in this case—public nuisance—we observe that "[c]ourts of equity have an ancient and unquestionable jurisdiction to prevent or abate public nuisance[.]"  But, we

---

[16] *Town of Weston v. Ralston*, 48 W. Va. 170, 36 S.E. 446, 456 (1900).

[17] 88 W. Va. 633, 107 S.E. 480, 481 (1921).

also observe the opposite. For example, while one court found that the public nuisance claim before it was equitable, it noted that nuisance claims seeking damages had, in some cases, been heard by a jury before the merger of law and equity.[18]

Finally, this Court in *Huntington* agreed and held (relying *inter alia* on *Tull*) that "public nuisance claims serve a different function in focusing on harm suffered by the public more generally and *seeking abatement of that harm through the court's equitable authority*."[19] Unless the Supreme Court of Appeals rules otherwise, the *Huntington* opinion is the law of this circuit.

No exact counterpart to this abatement action existed in eighteenth-century England; however, the closest analogue was a common law action filed by the commonwealth to abate a public nuisance through injunction. In the eighteenth century, these actions were brought in courts of equity.[20]

---

[18] *State ex rel. Amerisourcebergen Drug Corp. v. Moats*, 245 W. Va. 431, 441-42, 859 S.E.2d 374, 384-85 (2021).

[19] *Huntington,* 2025 LEXIS 436594, at *32 (emphasis added).

[20] *See* Spencer, *Public Nuisance- A Critical Examination,* 48 Cambridge Law Journal 55, 66- 73 (1989); Pomeroy, *A Treatise On Equity Jurisprudence* §1349, 380 (1st ed. 1881).

The fact that courts of equity could refer certain issues, like whether a particular category of harm constitutes a public nuisance, to a jury does not alter this conclusion. When such referrals were made, the courts did so pursuant to their discretionary power, not because litigants had any "right" to a jury trial on the issue. Where a court of equity "possessed subject matter jurisdiction, it was never obliged to refer a fact dispute to a common law trial."[21] The discretionary nature of jury referrals by courts of equity was and is well-accepted.[22] Courts of equity could refer issues to a jury in any action for equitable relief (and not just public nuisance actions). Any argument that the availability of a referral renders a claim legal instead of equitable would establish a jury trial right in almost any action for equitable relief.[23] The Seventh Amendment does not require this result.

---

[21] Langbein, *Fact Finding in the English Court of Chancery: A Rebuttal,* 83 Yale L.J. 1620, 1624 (1974).

[22] *Id.* at 1624-1625; *see also* James, *Right to a Trial in Civil Actions,* 72 Yale L.J. 655, 655 (1963).

[23] Langbein, 83 Yale L.J. at 1624-1625 (noting broad power of equity courts to refer questions to jury for factfinding). Some authorities hold that the English court where equitable actions were tried, the Court of the Exchequer, was forbidden from engaging in factfinding. 3 W. Blackstone, *Commentaries on the Laws of England,* 48 (1765) ("if any fact

Even when courts of equity referred issues to a jury, the jury's opinion was advisory. Courts of equity often accepted the jury's findings, but "this was a voluntary policy."[24] Aside from some narrow exceptions that do not apply here, those courts "delegated fact disputes to common law trial *for their own convenience*, and the verdict was advisory only."[25] Although those courts may have accepted the jury's verdict, they had unlimited discretion to disregard the verdict and "grant a new trial" or "enter a decree contrary to the verdict."[26] The availability of an advisory verdict then is no different than now as Fed. Rule Civ. Pro. 39(c) permits a court to empanel an advisory jury. The use of an advisory jury in England before the adoption of our Constitution did not transform an equitable action into a legal one any

---

be disputed between the parties, the [court] cannot try it, having no power to summon a jury"). Giving Seventh Amendment significance to such a rule would effectively grant a right to a jury trial in all cases as cases without factual disputes do not go to trial. *Cf.* Fed. R. Civ. Pro 56.

[24] Langbein, 83 Yale L.J. at 1626.

[25] *Id.* at 1627 (emphasis added); *see also Earl of Ripon v. Hobart* 40 E.R. 65, 68-70 (1834) (referring issue in public nuisance action to modern-day equivalent of special master).

[26] Langbein, at 1627; *see also* Spence, *The Equitable Jurisdiction of the Court of Chancery,* pp. 383-384 (1846).

more than the existence of a potential advisory jury under Rule 39(c) would today.

The most oft-cited authority to the contrary is Justice Story's 1849 treatise, which while noting that "an information also lies in Equity to redress [a public nuisance] by way of injunction," stated: "[b]ut the question of nuisance or not must, in cases of doubt, be tried by a jury; and the injunction will be granted or not, as that fact is decided."[27] Reviewing the authorities cited by Justice Story, it is clear that he was concerned with factually different claims – injunctive actions by mostly private parties seeking to halt prospective nuisances rather than, as is the case here, governmental public nuisance actions seeking abatement.

In *People v. ConAgra Grocery Prod. Co.*, the court distinguished Justice Story's comment regarding a jury trial following an extensive review of the authorities he cited finding that the English authorities Story cited involved private plaintiffs seeking prohibitory injunctions

---

[27] Story, *supra* at § 923, 251.

rather than governments seeking abatement.[28] As the *ConAgra* Court recognized:

> The distinction between prohibitory injunctions and abatement orders was recognized in the 1850s in England. In *Attorney-General v. Birmingham Council* (1858) 70 Eng.Rep. 220 [4 K.&J. 528] (*Birmingham*), the plaintiffs sought an abatement order barring the defendants from continuing to pollute a river with sewage. (*Birmingham*, at p. 220.) The defendants argued before the Chancellor that under *Cleaver* and *Earl of Ripon* the Chancellor should not interfere and should leave the plaintiffs to seek a remedy at common law. (*Birmingham*, at p. 223.) The Chancellor rejected this argument and granted an abatement injunction. (*Birmingham*, at p. 228.)[29]

Notably, *ConAgra* was brought by a government seeking abatement of public nuisance arising out of the use of interior lead paint. The court found that there was no right to a jury trial under a California constitutional provision which is functionally identical to the Seventh Amendment.[30] Early United States decisions also confirm that government-brought public nuisance actions are equitable.[31]

---

[28] 17 Cal. App. 5th 51, 127–28, 227 Cal. Rptr. 3d 499, 565 (Ct. App. 2017).

[29] *Id.*

[30] *Id.* at 131, 227 Cal. Rptr. 3d at 568.

[31] *Pennsylvania v. Wheeling and Belmont Bridge Co.*, 54 U.S. 518, 522 (1851) (exercising original jurisdiction as court of equity over public nuisance action for abatement); *see also In re Debs*, 158 U.S. 564, 592

## 2.  Abatement is an equitable remedy.

With respect to the second part of the *Tull* test, it is clear that the remedy sought by Plaintiffs is equitable, not legal. As Judge Polster correctly concluded:

> [T]he fact that "nuisance" is sometimes characterized as a variety of "tort" does not change the fact that an equitable claim to abate a nuisance is not a tort claim seeking compensatory damages. Defendants also argue that what Plaintiffs' label as a claim for "abatement costs" is in fact a "claim for damages."  Unlike tort damages that compensate an injured party for past harm, abatement is equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance.[32]

---

(1895) ("Indeed, it may be affirmed that in no well-considered [sic] case has the power of a court of equity to interfere by injunction in cases of public nuisance been denied"); *Mugler v. Kansas*, 123 U.S. 623, 673 (1887) (recognizing that courts of equity have jurisdiction over public nuisance cases and that a jury trial "is not required in suits in equity brought to abate a public nuisance."); *see also Wedel v. United States*, 2 F.2d 462, 462 (9th Cir. 1924) (recognizing that courts of equity had jurisdiction over public nuisances "to give a more speedy, effectual, and permanent remedy than can be had at law" and therefore rejecting a right to jury trial for a suit to abate a public nuisance).

[32] *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 U.S.Dist. LEXIS 150562, at *3 (N.D. Ohio Sept. 4, 2019); *see also In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 U.S. Dist.LEXIS 165494, at *24 (N.D. Ohio Sept. 26, 2019) ("it is settled law that, if a defendant is found liable for creating a public nuisance, the decision of whether to impose an abatement remedy (and if so, what that remedy should be) is one that must be decided by the Court, not the

This is not a controversial proposition.[33] In deciding whether the Seventh Amendment guaranteed a jury trial for a government action seeking civil penalties and injunctive relief under the Clean Water Act, *Tull*

jury"); *In re Nat'l Prescription Opiate Litig.,* No. 1:17-MD-2804, 2019 U.S. Dist. LEXIS 144585, at *1 (N.D. Ohio Aug. 26, 2019) ("the harmed party can, when appropriate, abate the nuisance themselves or ask the court for the right to do so, and then seek compensation for the costs of abating the nuisance. This compensation is equitable in nature. The goal is not to compensate the harmed party for harms already caused by the nuisance. This would be an award of damages. Instead, an abatement remedy is intended to compensate the plaintiff for the costs of rectifying the nuisance, going forward.").

[33] *See Bennis v. Michigan,* 516 U.S. 442, 446, 116 S. Ct. 994, 997, 134 L. Ed. 2d 68 (1996) (noting that state court "confirmed the trial court's description of the nuisance abatement proceeding as an 'equitable action,'); *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 781 (7th Cir. 2011) ("A court may grant equitable relief to abate a public nuisance that is occurring or to stop a threatened nuisance from arising."); *San Diego Unified Port Dist. v. Monsanto Co.*, No. 15CV578-WQH-JLB, 2018 U.S. Dist. LEXIS 149485, at *5 (S.D. Cal. Aug. 30, 2018) ("An abatement of a nuisance is accomplished by a court of equity by means of an injunction proper and suitable to the facts of each case."); *Orange Cty. Water Dist. v. Unocal Corp.,* No. SACV0301742CJCANX, 2016 U.S. Dist. LEXIS 193938, at *5 (C.D. Cal. Nov. 3, 2016) ("Abatement is rooted in equitable, injunctive relief."); *W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 208 F. Supp. 3d 1227, 1234 (N.D. Ala. 2016) (As defendants state, plaintiffs' claim for 'abatement of nuisance' is actually a request for equitable relief. . ."); *New York v. W. Side Corp.*, 790 F. Supp. 2d 13, 29 (E.D.N.Y. 2011) ("This goes back to the original theory of nuisance under which "if abatement by judicial process was desired, [a] resort to equity was required.").

distinguished civil penalties, which were punitive in nature (and could only be enforced in courts of law), from the injunctive relief provided to abate a public nuisance, which is equitable.[34]

A number of federal courts applying *Tull's* test have concluded that a public nuisance abatement action is an equitable action that does not implicate the Seventh Amendment.[35] Similarly, in the course of interpreting similar state constitutional provisions, numerous state

---

[34] 481 U.S. at 423.

[35] *See, e.g., Nat'l Ass'n For the Advancement of Colored People (NAACP) v. Acusport Corp.,* 226 F. Supp. 2d 391, 397 (E.D.N.Y. 2002) (citing authorities) (public nuisance action challenging the proliferation of firearm sales and seeking "recovery of costs incurred in abatement are equitable"); *United States v. Wade*, 653 F. Supp. 11, 13 (E.D. Pa. 1984) ("[T]he Commonwealth has elected to seek recovery only of its costs incurred in abating the nuisance. . . . relief [that] is in the nature of equitable restitution. The non-generator defendants therefore have no right to a trial by jury of the issues presented in the nuisance count."); *Conner v. City of Santa Ana*, 897 F.2d 1487, 1493 (9th Cir. 1990) ("The City was proceeding to abate a nuisance; it was not proceeding under a criminal forfeiture statute. Therefore, a jury was not required to determine whether the Conners' automobiles constituted a nuisance.. . ."); *Citizens for Alternatives to Radioactive Dumping v. CAST Transportation, Inc.,* No. CV 99-321 MCA/ACT, 2004 U.S. Dist. LEXIS 34843 at *17 (D.N.M. Sept. 30, 2004) (court in public nuisance abatement action concluded that "both the nature of the cause of action and the remedy sought here compel the conclusion that this action is one in equity to which no constitutional right to a jury trial attaches.").

courts have refused to find a right to a jury trial in public nuisance actions

seeking abatement.[36]

### B. The cases to the contrary are either distinguishable or unpersuasive.

To the extent there is language in *Mugler v. Kansas*, *supra,* that

suggests that a jury is required when the existence of a public nuisance is

disputed,[37] that language is dicta and unpersuasive. First, the *Mugler*

---

[36] *See Com. v. United Food Corp.,* 374 Mass. 765, 778, 374 N.E.2d 1331, 1341 (1978) ("[A]n injunction against the future maintenance of a public nuisance may properly be entered without the involvement of a jury."); *State ex rel. Wilcox v. Ryder,* 126 Minn. 95, 106, 147 N.W. 953 (1914) ("As to their claim of right to jury trial, even if the action be held civil in all its details, it is sufficient to say that in its main features the proceeding is unquestionably equitable, and that when a court of equity properly assumes jurisdiction of a cause for one purpose it acquires it for all and grants full relief."); *Pompano Horse Club v. State,* 93 Fla. 415, 428-430, 111 So. 801, 806-807 (1927) (A proceeding by suit in equity, to suppress by injunction, as a public nuisance, does not deprive the defendant in such suit of a right to trial by jury as secured by the Constitution); *King v. Commonwealth,* 194 Ky. 143, 238 S.W. 373, 375 (1922) ("As the defendant was not anciently entitled to trial by jury in cases where the relief sought was purely equitable, as in this case, the seventh constitutional provision relied upon has no application"); *State ex rel. Miller v. Anthony* (1995), 72 Ohio St.3d 132, 647 N.E.2d 1368 ("In Ohio, it is well settled that there is no right to a jury trial in a nuisance abatement action").

[37] 123 U.S. at 623 ("the question of nuisance or not must in cases of doubt be tried by a jury" (citing 2 Story, Eq. Jur. § 923)).

Court relied on the quote from Justice Story which, as noted above, is not persuasive in the context of abatement actions. Instead, *Mugler* addressed a criminal prosecution for violation of state liquor laws, not a civil action for public nuisance. In addition, the Court did not address the distinction between abatement and an anticipatory injunction.[38] In any event, the Supreme Court's later approach in *Tull* and *Chauffeurs* undermines *Mugler's* continued applicability.

Finally, this Court in *Huntington* rejected the premise of ESI's argument – that requiring the payment of money cannot constitute equitable relief:

> And notably, the goal of abatement in a public nuisance case is to repair a public right that has been damaged by a defendant. . . . Courts have broad powers to effect equitable relief, *see Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S. Ct. 1086, 90 L. Ed. 1332 (1946). . . In fact, the State Supreme Court has suggested that a nuisance can be abated by the expenditure of labor or money, by the defendant.[39]

---

[38] *Cf. ConAgra, supra.*

[39] 2025 LEXIS 436594, at *57-58 (internal quotation and citations omitted).

While the Court was addressing the elements of a public nuisance claim under West Virginia law, it cited approvingly federal precedent on the scope of federal equitable relief:

> We also observe that at least two of our sister circuits have held that injunctions that "compel expenditures of money" may be "permissible forms of equitable relief." *United States v. Price*, 688 F.2d 204, 213 (3d Cir. 1982); *see also United States v. Apex Oil Co.*, 579 F.3d 734, 736 (7th Cir. 2009) ("That equitable remedies are always orders to act or not to act, rather than to pay, is a myth; equity often orders payment.").[40]

In *City of New York v. Beretta, U.S.A. Corp.*, the district court, in an abundance of caution, ordered a jury trial in a public nuisance case.[41] *Beretta* reasoned that the "precedential value and impact of such a case is likely to be substantial," and that "[a] jury is likely to enhance the sense of parties and public that justice has been served— providing the litigation with greater moral as well as legal force."[42] However, *Beretta* did not address Federal Rule of Civil Procedure 39(a), which requires a nonjury trial if the Court finds "there is no

---

[40] *Id.* at n. 18;  *see also*

[41] 312 F. Supp.2d 411, 414 (E.D.N.Y. 2004).

[42] *Id.*

24

federal right to a jury trial." Here, because there is no federal right to a jury trial on the public nuisance abatement claim, absent agreement by the parties, Rule 39 dictates that a jury shall not try the claim.

To the extent Defendants rely on dicta from Judge Polster in the MDL where he decided to bifurcate the abatement remedy from an otherwise required jury trial, that decision should not apply here. First, at the time of that decision, Plaintiffs were still pursuing state and federal racketeering claims for which the right to a jury trial unquestionably attached.[43] As such, Plaintiffs did not dispute the decision to bifurcate the abatement remedy from liability.[44] This case

---

[43] *See In re Nat'l Prescription Opiate Litig.,* No. 1:17-MD-2804, 2019 U.S. Dist. LEXIS 163272, at *23 (N.D. Ohio Sept. 24, 2019) (noting "the great majority of facts the jury will need to find to decide plaintiffs' legal claims (federal RICO, Ohio Corrupt Practices Act, and civil conspiracy) are the same as those any finder of fact would have to determine to decide the nuisance claims").

[44] *Id.* at *1; *cf. id.* at * 3 ("Also supporting the decision to try nuisance liability to the jury is Supreme Court authority holding clearly that all facts found by a jury in adjudicating legal claims, which are also relevant to the plaintiffs' equitable claims, are binding on a court's subsequent determination of those equitable claims." (citing *Tull*, 481 U.S. at 425 ("[I]f a 'legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'")).

is different because here it is anticipated that the non-equitable claims (all claims other than public nuisance) will be dismissed prior to trial, and bifurcation would be contrary to *Tull,* which rejected bifurcation as a "novel" approach.[45]

Finally, relying on *Beretta, supra.,* Judge Polster cited jurisprudential considerations that are inapplicable here.[46] Unlike the MDL trial which included both equitable claims and legal claims where the right to a jury trial unquestionably existed, relying on jurisprudential considerations here when no right to a jury trial exists is inconsistent with Rule 39's mandate that the District Court determine whether the right to a jury trial exists.

### C. The existence of legal claims in Plaintiffs' complaint which are in the process of being dismissed is not fatal to the trial plan.

ESI argues that, when legal claims and equitable claims exist in the same case, the Court must hold a jury trial on the legal claims first. Plaintiffs did not dispute this below.[47] Plaintiffs' counsel here were lead

---

[45] *Tull*, 481 U.S. at 421, n.6.

[46]  2019 U.S. Dist. LEXIS 163272 at *24.

[47] Cite to response on motion to reconsider.

trial counsel and appellate counsel in *Moats* where the Supreme Court of Appeals similarly held.[48] *Moats* recognized that a bench trial cannot proceed first while the legal claims for damages remain in the Complaint.[49] The W. Va. MLP then required the Plaintiffs to dismiss all legal claims and requests for damages to participate in the scheduled bench trial on public nuisance.[50] These Plaintiffs did so and the bench trial was set on the claims for abatement of a public nuisance.[51] ESI (at p.16) points to the damage requests in the complaints here. As was the case in state court, the dismissal of the legal claims will include dismissing any request for damages in the remaining public nuisance claims. This is sufficient to require a bench trial. As ESI notes (at p.18)

---

[48] *Moats*, 245 W. Va. at 443, 859 S.E.2d at 386.

[49] *Id.*

[50] *In re: Opioid Litigation,* Order Regarding Voluntary Dismissal of Legal Claims Discussed During September 10, 2021 Status Conference, at 1 (W.Va. MLP, Sept 30, 2021) (https://www.courtswv.gov/sites/default/pubfilesmnt/2023-07/10-1-21OrderVoluntaryDismissalLegalClaims.pdf).

[51] *See, e.g., In re: Opioid Litigation,* Order Granting Plaintiffs' Rule 41(A)(2) Motion to Dismiss Certain Claims, at 1 (W.Va. MLP, Sept 17, 2021) (https://www.courtswv.gov/sites/default/pubfilesmnt/2023-07/9-17-21BeckleyFairmontOrderGrantingRule41CertainClaims.pdf).

this Court held in *Skippy, Inc. v. CPC Int'l, Inc.*, 674 F.2d 209, 215 (4th Cir. 1982), that a "case presented issues purely equitable in nature that could be resolved by the court without empaneling a jury" after the district court "dismissed [plaintiff's] claims for damages leaving only claims for injunctive relief."

The Court made clear that the trial plan was premised on Plaintiffs' counsel's stated "intention to seek client authorization to dismiss their legal claims in advance of the August 2026 bench trial, consistent with their prior representations to the Court" so that the only claims remaining would be the equitable public nuisance abatement claims.[52] If for some reason that did not happen, the Court indicated it "would then issue a revised trial plan addressing any surviving legal claims."[53] This is not a case where the trial is imminent – the trial date is eight months away. Given the stated intentions of Plaintiffs and the District Court,

---

[52] Order on reconsideration at6.

[53] *Id.* While the Court was addressing the contingency of an adverse ruling on the public nuisance claim by this Court in *Huntington,* the example evidences the Court's intent to hold a bench trial premised on there being only public nuisance claims remaining in the case. Indeed, the Court expressly characterized the same arguments Express Script urges here as "at best premature." *Id.*

any concern of ESI that its Seventh Amendment rights would be violated by the Court hypothetically conducting a bench trial when unresolved legal claims for damages remain is not ripe and cannot justify the extraordinary relief of a writ of mandamus.[54]

## II. THE DISTRICT COURT'S TRIAL PLAN DOES NOT WARRANT THE EXTRAORDINARY RELIEF OF MANDAMUS.

### A. The District Court did not exceed its authority or act beyond its jurisdiction because the trial plan does not convert plaintiffs' individual claims to statewide claims for public nuisance or seek to issue statewide relief.

In claiming the District Court exceeded its jurisdiction, Express Scripts advances three arguments: (1) Plaintiffs lack standing to assert a claim on behalf of the State; (2) the trial plan improperly seeks statewide relief; and (3) the trial plan improperly treats this case as a *de facto* class action. Pet. for Writ of Mandamus, No. 3-1. Express Scripts' arguments misrepresent Plaintiffs' claims and further conflate standing

---

[54] *In re Quinteros*, 721 F. App'x 234, 235 (3d Cir. 2018) (denying mandamus petition when underlying habeas petition not ripe for disposition).

with the type of proof that may be used to satisfy Plaintiffs' evidentiary burden at trial.

Each of the one-hundred and twenty (120) West Virginia city and county Plaintiffs in this case has individual standing to assert a public nuisance claim pursuant to statutory authority conferred upon them to "abate or cause to be abated" a public nuisance within their jurisdictions.[55] As correctly found by the District Court, Plaintiffs are not bringing their cases on behalf of the State, nor are they bringing a *parens patriae* suit. Pet. Add. at 3-2. The District Court also made clear that *each* Plaintiff must still establish *every* element of its *own* claim to prevail. *Id.* The District Court's trial plan thus does not alter the fundamental or

---

[55] *See* W. Va. Code § 7-1-3kk (county commissions are authorized to "take other appropriate and necessary actions for the elimination of hazards to public health and safety and to abate or cause to be abated anything which the commission determines to be a public nuisance"); W. Va. Code § 8-12-5 (13) (municipalities may take action "to prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholesome"); *id.* at (22) (to provide for the elimination of hazards to public health and safety and to abate or cause to be abated anything which in the opinion of a majority of the governing body is a public nuisance).

substantive nature of Plaintiffs' *individual* claims, nor have their claims been converted into one by the State to abate a statewide public nuisance.

The District Court's trial plan also does not purport to issue statewide relief or affect statewide rights. The District Court made this clear: "The trial plan does not purport to determine the rights of counties or municipalities that are not parties to this litigation." *Id.* The District Court further held, "[a]ny judgment in favor of plaintiffs will extend only to the named plaintiffs" based upon the success and merits of each Plaintiff's individual claim, and "non-parties remain free to pursue their own claims." *Id.* Likewise, if defendants prevail, any local government not a party to this litigation is not precluded from pursuing its own independent action. *Id.* For these reasons, the trial plan also does not convert this case into a *de facto* class action because non-parties to this litigation are not entitled to relief or bound by any judgment in this case. *Id.*

In this litigation, as well as the W. Va. MLP, both local West Virginia governments like Plaintiffs here and the State of West Virginia through its Attorney General brought claims and both successfully recovered, thus further demonstrating that the West Virginia local

government Plaintiffs in this case each possess their own respective standing to bring their own claims under West Virginia law and the same trial plan at issue here. What is more, in the W.Va. MLP, the West Virginia Supreme Court rejected the same arguments Express Scripts makes here about the "statewide" nature of the trial when the defendants there similarly argued that the W. Va. MLP's trial plan improperly converted the plaintiffs' individual claims into claims for a statewide public nuisance. *W. Va. ex rel. AmerisourceBergen Drug Corp. v. Moats*, Petition for Writ of Prohibition, No. 21-0986 (W. Va., Dec. 7, 2021); *Id.*, Order Denying Petition for Writ of Prohibition, No. 21-0986 (W. Va., March 21, 2022).

Express Scripts' argument there is no basis to hold a "statewide" trial is based on a misunderstanding of the District Court's trial plan. The Phase I trial will only address the common issues of the existence of a public nuisance and Express Scripts' wrongful conduct. Pet. Add. at 3-4. These issues are clearly common to all Plaintiffs' individual claims of public nuisance because Plaintiffs have alleged the same public harms from the nuisance condition and the same systemic and wrongful conduct by Express Scripts in causing the condition. Relevant to these issues in

Phase I are statewide evidence and statistics of the opioid epidemic throughout West Virginia, but the use of this proof does mean Plaintiffs' claims have been converted into claims on behalf of the State. The District Court was correct to try these common issues that can be established with statewide proof in one trial because it would be inefficient and duplicative for Plaintiffs to present the same evidence in 120 separate trials. The District Court's trial plan efficiently resolves these predicate issues first, thereby preserving resources of the Court and parties.

> ### B. ESI has failed to satisfy its exceptionally high burden of establishing the extraordinary circumstances that warrant mandamus.

ESI has failed to satisfy any of the requirements necessary for mandamus relief. *First*, ESI has not established it has no other adequate means to attain the relief it seeks. Instead, ESI uses this Petition as a substitute for an interlocutory appeal, which precludes mandamus. *Kerr v. United States Dist. Court,* 426 U.S. 394, 403 (1976) (recognizing that, in order to ensure "the writ will issue only in extraordinary

circumstances, . . . the party seeking issuance of the writ [must] have no other adequate means to attain the relief" sought).

*Second*, the trial plan at issue was implemented by the District Court in accordance with the authority and discretion afforded it. As in any case, courts have broad discretion in how to manage litigation. *See, e.g.*, *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380 (1987) ("Particularly in a complex case such as this, a district judge's decision on how best to balance the rights of the parties against the need to keep the litigation from becoming unmanageable is entitled to great deference.").[56] When the action sought to be reviewed is one that is committed to discretion, such as the case management order at issue here, "it cannot be said that a litigant's right to a particular result is 'clear and indisputable,'" and relief by a writ of mandamus would ordinarily not be available. *In re City of Virginia Beach*, 42 F.3d 881, 884 (4th Cir. 1994) (quoting *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36 (1980))*; see*

---

[56] *See also In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 246 (3d Cir. 2013) ("[I]n complex cases, district courts must have wide discretion to manage 'complex issues and potential burdens on defendants and the court.'").

*also In re Strickland*, 87 F.4th 257, 261 (4th Cir. 2023 )("Given these circumstances, we conclude that issuing a writ of mandamus directing the district court to set this matter for trial prior to December 11, 2023, would be entirely inappropriate and would invade the "broad discretion" that is "given to the [district] court to manage its docket.").

*Third*, a writ of mandamus is not appropriate under the circumstances. While writs of mandamus to review discretionary decisions of district judges are not proscribed, they should "hardly ever" issue. *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984) (citing *Allied Chemical*, 449 U.S. at 36). The rare exception when mandamus is appropriate under these circumstances is not this case. Simply put, the District Court implemented a tried and proven trial plan consistent with legal precedent from other courts in handling similar litigation which neither prejudices ESI's rights nor causes procedural unfairness. ESI has presented no evidence demonstrating otherwise besides its flawed legal and factual arguments.

## CONCLUSION

ESI has failed to establish *any* legal error or abuse of discretion in the District Court's case management order and trial plan, let alone a clear and undisputable error that would constitute an extraordinary cause justifying the drastic remedy of mandamus. The Court should deny the Petition.

Dated: November 12, 2025

**Respondents Ohio Co. Comm, et al.**
**By Counsel**

s/Anthony J. Majestro
Anthony J. Majestro
Christina L. Smith
**POWELL & MAJESTRO PLLC**
405 Capitol Street, Suite 807
Charleston, WV 25301
amajestro@powellmajestro.com
csmith@powellmajestro.com

Robert P. Fitzsimmons
Clayton J. Fitzsimmons
Mark A. Colantonio
Christine Pill Fisher
**Fitzsimmons Law Firm PLLC**
1609 Warwood Avenue
Wheeling, WV 26003
bob@fitzsimmonsfirm.com
clayton@fitzsimmonsfirm.com
mark@fitzsimmonsfirm.com
christy@fitzsimmonsfirm.com

Paul T. Farrell, Jr.
Michael J. Fuller, Jr.
**Farrell & Fuller LLC**
270 Munoz Rivera Avenue
Suite 201
San Juan, Puerto Rico 00918
paul@farrellfuller.com
[mike@farrellfuller.com](mailto:mike@farrellfuller.com)

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Anthony J. Majestro, counsel for Respondents and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 21(d), that the attached Response to Petition for Writ of Mandamus is proportionately spaced, has a typeface of 14 points or more ,and contains 7644 words.

s/ Anthony J. Majestro
Anthony J. Majestro (WVSB 5165)

## CERTIFICATE OF SERVICE

I, Anthony J. Majestro, counsel for Respondents and a member of the Bar of this Court, certify that on November 12, 2025, a copy of the attached Response to Petition for Writ of Mandamus was filed with the Clerk and served on the parties through the Court's electronic filing system.

s/ Anthony J. Majestro
Anthony J. Majestro (WVSB 5165)
